UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:  Jeremy Michael Huber, | Case No.: 20-21646-beh |
| Debtor, | Chapter 13 |

## NOTICE OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND DECLARATION THAT THE DEBT IS NOT DISCHARGED

PLEASE TAKE NOTICE that the Creditor, Worth Enterprises, LLC, ("Worth"), by its attorneys, has filed a Motion for Relief from the Automatic Stay and Declaration that the Debt is Not Discharged, a copy of which is enclosed.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant relief from the automatic stay, or of you want the Court to consider your views on the Motion for Relief from the Automatic Stay, then no later than **21 days from the date of service of this notice**, you or your attorney must:

File with the Court a written response explaining your position and requesting a hearing at:
Clerk, United States Bankruptcy Court
517 East Wisconsin Avenue, Room 126
Milwaukee, WI 53202-4581

If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the deadline stated above.

You must also send a copy to:

| | |
|---|---|
| Office if the U.S. Trustee | Banse Law Group |
| 517 E. Wisconsin Ave. Room 430 | 1433 N. Water St. 4th Floor |
| Milwaukee, WI 53202 | Milwaukee, WI 53202 |

If you file an objection, the court will set a hearing. You will be notified of the hearing and you or your attorney must appear at it.  If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting the relief requested.

Date: 9/17/2021

/s/ Crystal A. Banse
State Bar No. 1065307
Attorneys for Worth Enterprises, Inc.
BANSE LAW GROUP
1433 N. Water St, 4th Floor
Telephone: (414) 209-0377
Fax: (414) 295-9088
E-mail: crystal@banselaw.com

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:   Jeremy Michael Huber,                          Case No.: 20-21646-beh

                 Debtor,                                 Chapter 13

---

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## AND DECLARATION THAT THE DEBT IS NOT DISCHARGED

---

Worth Enterprises, LLC ("Worth"), by and through its counsel, Crystal Banse of Banse Law Group, hereby moves (the "Motion") this Court, pursuant to 11 U.S.C. § 362(d)(1) and Fed. R. Bankr. P. 4001, for an Order granting Worth relief from the automatic stay to permit the Wisconsin State Court to issue its decision and order on Summary Judgment that has been pending since June 25, 2021, in the matter captioned *Worth Enterprises, LLC v. JLH Enterprises, LLC & Jeremy L. Huber*, Rock County Circuit Court, Case No. 2019CV1209. In support hereof, Worth respectfully states as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

2.  JLH Enterprises, LLC through its principal, Jeremy L. Huber ("Debtor"), entered a property management services contract on June 20, 2017, amended on September 14, 2017, for

the property management of 308 Albion Street, Edgerton, WI 53534. Exhibit 1 – Summons, Complaint & Supporting Documents.

3. Debtor, through JLH Enterprises, LLC breached the contract by failing to remit rental income to Worth in September 2017, November 2017, and April 2018 through April 2019. *Id.*

4. On December 6, 2019, Worth filed suit in state court, *Worth Enterprises, LLC v. JLH Enterprises, LLC & Jeremy L. Huber*, Rock County Circuit Court, Case No. 2019CV1209, alleging breach of contract and civil theft, pursuant to Wis. Stat. § 895.446(1). *Id.*

5. Worth alleged in its lawsuit that during the contractual relationship, Debtor collected, possessed, and took custody of rental income owed to Worth in the amount of $22,723.00. *Id.*

6. Worth further alleged that Debtor intentionally retained possession without Worth's consent, $14,667.00 of rental income, inclusive of bank and returned check fees, with intent to convert to his own use. *Id.*

7. Worth further alleged that upon Worth's demand to return the income collected during their business arrangement, Debtor refused to deliver the rental income in his possession, which demonstrated prima facie evidence of an intent to convert the rental income to his own use. *Id.*

8. Worth claimed damages of more than $16,600.00. *Id.*

9. On January 9, 2020, Debtor filed a *pro se* Answer and Affirmative Defenses, where he admitted that he failed to provide the rental income and made multiple promises to pay but failed to do so. Exhibit 2.

10. Debtor admitted that Worth attempted to resolve the nonpayment before resorting to litigation and that Worth attempted to set up a payment plan that JLH Enterprises, LLC and Debtor initially agreed to, but failed to execute. *Id.*

11. Debtor further admitted the monies due and owing but disputed the amount of $14,667.00, inclusive of bank and returned check fees. *Id.*

12. On February 26, 2020, Debtor commenced his Chapter 13 bankruptcy case with the filing of a skeletal Chapter 13 Petition. Debtor's creditor matrix did not include either Worth or the undersigned counsel, who was representing Worth in the state court litigation, and even though the state court litigation was fully underway at this point. Dkt # 1.

13. On February 29, 2020, Debtor's counsel filed a Certificate of Service of the Petition. Dkt # 9.

14. Since neither Worth nor the undersigned were listed on the creditor matrix, neither Worth nor the undersigned received notice of the bankruptcy case. Exhibit 3 - Declaration of Crystal Banse.

15. On April 3, 2020, Debtor's counsel files the Statement of Financial Affairs, Schedules, and the Chapter 13 Plan. Dkts. 21,23.

16. The Worth litigation is listed on Schedule E/F, line 4.30, with the amount $16,658.00. Dkt.

17. On April 6, 2020, Debtor's counsel files a Declaration of Mailing / Certificate of Service referencing the Chapter 13 Plan. Dkt. 26.

18. Despite being scheduled, neither Worth nor the undersigned received notice because the creditor matrix was not updated to include either.

19. On June 24, 2020, the state court held a scheduling conferencing hearing via Zoom. The Debtor appeared at the June 24, 2020, conference, but did not disclose his bankruptcy case to the court nor Worth's counsel. Exhibit 4 – June 24, 2020, Hearing Notes from CCAP.

20. On July 23, 2020, Worth files a Motion for Summary Judgment in state court. Exhibit 5.

21. On August 6, 2020, the Order confirming the Chapter 13 Plan is filed. Dkt. 43.

22. On August 31, 2020, Debtor filed a Response to the state court Motion for Summary Judgment, where he finally advises the Court that he filed for bankruptcy and attached the August 4, 2020, Order Confirming the Chapter 13 Plan. Exhibit 6.

23.    In his response, Debtor admitted that the monies are due and owing but disputes the amount because he claims to have paid $100.00 On June 7, 2020, and $2,000.00 on June 17, 2020, which he contended were not credited. *Id.*

24.    On September 11, 2020, Worth files a Reply in state court in support of its Motion for Summary Judgment, informing the court advises that this is the first she learned about Debtor's bankruptcy case, despite the length of time the litigation was pending, and all the activity already undertaken in the bankruptcy court. Exhibit 7.

25.    On September 21, 2020, Worth's summary judgment hearing was held in state court via Zoom. The Debtor failed to appear. Exhibit 8 - Transcript of Final Hearing.

26.    The state court judge held the September 21, 2020, hearing in Debtor's absence at which the undersigned reiterated lack of notice of Debtor's bankruptcy case. *Id.* 5:7-11.

27.    At the September 21, 2020, hearing, the judge stated that "Court finds Defendant in default due to non-appearance." *Id.* 2:23.

28.    The state court issued findings at the September 21, 2020, hearing, and stated summary judgment would be granted in favor of Worth, but only after the undersigned confirmed whether the automatic stay was in place, which would preclude the court from entering judgment. *Id.* 6:13-17.

## I.    RELIEF FROM THE AUTOMATIC STAY

29.    Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay… (1) for cause, including the lack of adequate protection of any interest in property of such party in interest…" 11 U.S.C. § 362(d)(1).

30.    Movant respectfully asserts that cause exists to lift the automatic stay in this case to permit the state court to enter summary judgment in its favor.

31.     The Bankruptcy Code does not define § 362(d)(1) "cause." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (quoting *In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990)). Cause is determined case-by-case. *Id*. In assessing whether cause exists, courts are mindful that "suspension of [the automatic stay] may be consonant with the purposes of the Bankruptcy Act when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." *Id*.

32.     *Fernstrom* elucidated the following three factor test to aid determination of cause, which asks whether:

>      a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,

>      b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and

>      c) the creditor has a probability of prevailing on the merits.

*Id*. (citing *In re Pro Football Weekly*, 60 Bankr. 824, 826 (N.D. Ill. 1986)).

33.     Movant asserts that no great prejudice will result to either the bankrupt estate or the Debtor if the stay is lifted to continue the state court action to permit the entry of judgment in favor of Movant.

34.     For nearly nine months, up until he filed his Response to Worth's Motion for Summary Judgment, the state court proceeding was underway. Debtor filed bankruptcy less than three months after the suit was filed and approximately 1 ½ months after filing his Answer to the Complaint. "Where the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to proceed." *Fernstrom*, 938 F.2d at 737.

35.     Debtor had ample time and opportunity to inform the court and the undersigned of the bankruptcy case but let it continue unabated, all the while participating in proceedings and

preparing and executing filings in state court. Debtor ceased participation at the very last hearing in the matter after finally notifying the court and the undersigned, through a responsive pleading, that he filed bankruptcy. He then failed to appear at the last scheduled hearing to explain any of his actions or inactions. Exhibit 8.

36. The length of time between the commencement of the state court action, Debtor's participation in the proceedings, and Debtor's inexplicable delay in revealing the bankruptcy, amply demonstrates that Debtor "bears some responsibility for creating the problems*." In re Frantz*, 602 B.R. 687, 693 (Bankr. E.D. Wis. 2019) (applying factor test and noting that "unlike in *Fernstrom*, the totality of the circumstances does not weigh in the creditor's favor here, and the debtor does not bear responsibility for the "problem" of having litigation pending in multiple places").

37. The hardship to the creditor is amplified by the Debtor's failure to list Worth or the undersigned in the creditor matrix, which deprived Movant of the right to participate in the bankruptcy proceedings. Even after adding the creditor to Schedule E/F, neither Movant nor the undersigned received any notice. Debtor continued to participate in the state court proceeding, taking up the court's time and using its resources as well as Movant's and counsel's time in hearings and filings.

38. The automatic stay negatively impacts Movant because it prevents judicial determination of the amount of debt owed.

39. It is undeniable that Movant will prevail on the merits in the state court action because the court is prepared to rule in Movant's favor once notified that the automatic stay will not prevent the Order granting summary judgment.

40. Equitable principles require that Movant be granted the requested relief from stay to permit the state court to enter judgment.

## II.     THE DEBT IS NOT DISCHARGED UNDER THE CIRCUMSTANCES HEREIN.

41.     The debt owed to Movant is not discharged because Movant did not receive the requisite notices as required under the Bankruptcy Code. This is more compelling given that Debtor added Movant to Schedule E/F but still failed to update the creditor matrix.

42.     Movant did not receive notice in time to fully participate in the bankruptcy proceedings, as is its right to do under the Bankruptcy Code.

43.     11 U.S.C. § 523(a)(3) is the authority to declare that the debt owed to Movant is not discharged. This provisions states:

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1192, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt—neither listed nor scheduled under section 521(a)(1) of this title [11 USCS § 521(a)(1)], with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> > (3) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing;…

44.     The debtor is obliged, upon petition filing, to include "a list containing the name and address of each entity included or to be included" on the schedules. Fed. R. Bankr. P. 1007(a)(1); 11 U.S.C. § 521(a)(1)(A). *In re Gaffney*, No. 19-71492, 2020 Bankr. LEXIS 2585, at *9 (Bankr. C.D. Ill. Sep. 29, 2020); *In re Wilcox*, No. 10-32828, 2011 Bankr. LEXIS 5359, 2011 WL 3347772, at *5 (10th Cir. BAP Aug. 4, 2011) (emphasizing that a list of creditors "is a critical part of the functioning of the bankruptcy court system, ensuring that notice of the bankruptcy proceedings is given to all interested parties." (citing *In re Harrell*, No. EC-20-1091-BTL, 2021 Bankr. LEXIS 854, at *3-4 (B.A.P. 9th Cir. Mar. 30, 2021). Bankruptcy Code § 521(1) and Bankruptcy Rule 1007(a)(1) "mandate" that the debtor "accurately list all creditors." *In re Wright*, 300 B.R. 453, 460 (Bankr. N.D. Ill. 2003).

45.     The Clerk uses the list to send notices about the bankruptcy to creditors and parties in interest. Fed. R. Bankr. P. 2002.

46.     Failure to schedule the debt, <u>and</u> failure to notify the creditor, to enable them to file a claim or seek determination of whether a debt is discharged, prevents the debt from being discharged. *In re Gaffney*, No. 19-71492, 2020 Bankr. LEXIS 2585, at *10. "A debtor's schedules cannot satisfy the debtor's duty to file a list of creditors." *In re Wilcox*, Nos. UT-10-083, 10-32828, 2011 Bankr. LEXIS 5359, at *9 (B.A.P. 10th Cir. Aug. 4, 2011); s*ee In re Harrell*, No. EC-20-1091-BTL, 2021 Bankr. LEXIS 854, at *3-4 (B.A.P. 9th Cir. Mar. 30, 2021) (stating that a debtor's failure to properly schedule a claim and a creditor's lack of notice of the bankruptcy, along with the requisite filing dates means the debt is not discharged (citing *In re Walker*, 927 F.2d 1138, 1144 (10th Cir. 1991)).

47.     Movant was not provided for in the Chapter 13 Plan either, as there was no claim filed that would have been allowed for Plan payment or disallowed. "[T]he debt will not be provided for by the plan if the creditor has not been given adequate notice of the chapter 13 proceedings." *In re Elstien*, 238 B.R. 747, 756 (Bankr. N.D. Ill. 1999) (citing *In re Hairopoulos*, 118 F.3d 1240, 1244 (8th Cir. 1997).

48.     As both the state court record and this Court's record shows, Movant was not properly listed for notice and had no actual or constructive notice or knowledge of the bankruptcy case. Movant filed no claim and was not provided for under the Plan.

49.     Movant respectfully requests that the Court declare that under the circumstances as set forth in this Motion, the debt owed to Movant is not discharged and Movant shall be entitled to pursue collection after both entry of judgment in state court and the conclusion of this bankruptcy case.

### III.     CONCLUSION

For the reasons set forth above, Worth requests that this court declare that this debt is not discharged and allow Worth relief from the automatic stay so that the state court can grant judgment in favor of Worth.

Respectfully submitted,

/s/ Crystal Banse
State Bar No. 1065307
Attorney for Worth Enterprises, Inc.
Banse Law Group
1433 N. Water St. Suite 400
Milwaukee, WI 53202
Telephone: (414) 209-0377
Fax: (414) 295-9088
E-mail: crystal@banselaw.com

# EXHIBIT 1

**FILED**
**12-06-2019**
**Clerk of Circuit Court**
**Rock County, Wisconsin**
**2019CV001229**
**Honorable Daniel T. Dillon**
**Branch 4**

STATE OF WISCONSIN     CIRCUIT COURT     ROCK COUNTY
_____

WORTH ENTERPRISES, LLC
1187 N. 1200 W, SUITE 300
OREM, UT 84057

vs.

Case No. 2019CV____

JLH ENTERPRISES, LLC
JEREMY L. HUBER
1940 RENAISSANCE COURT
GREEN BAY, WI 54313-4347
_____

### SUMMONS
_____

THE STATE OF WISCONSIN, to each person/entity named above as a Defendant:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within 20 days of receiving this summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint. The court may reject or disregard an answer that does not follow the requirement of the statutes. The answer must be sent or delivered to Rock County Clerk of Court, 51 S. Main Street, Janesville, WI 53545, and to plaintiff's attorneys, Banse Law Group, 25 W. Main Street # 500, Madison, WI 53701-1767. You may have an attorney                                    represent                                    you.

If you do not provide a proper answer within 20 days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

If you require special accommodations because of a disability, please call 608-743-2200 (TDD 608-743-2200) and ask for the Court ADA Coordinator.

Dated this 5th day of December, 2019.

BANSE LAW GROUP

Electronically signed by Crystal A. Banse
State Bar No. 1065307
Attorneys for Worth Enterprises LLC

25 W. Main Street # 500
Madison, WI 53703
(608) 620-5295 direct
(608) 618-4249 assistant
(608) 509-7053 fax
crystal@banselaw.com

2

FILED
12-06-2019
Clerk of Circuit Court
Rock County, Wisconsin
2019CV001229
Honorable Daniel T. Dillon
Branch 4

STATE OF WISCONSIN    CIRCUIT COURT    ROCK COUNTY

WORTH ENTERPRISES, LLC

vs.

                    Case No. 2019CV_____

JLH ENTERPRISES, LLC
JEREMY L. HUBER

---

## COMPLAINT

NOW comes the Plaintiff, Worth Enterprises LLC, by its attorneys Banse Law Group, by Attorney Crystal A. Banse, hereby pleads as follows:

<u>PARTIES</u>

1.    Worth Enterprises, is a Utah limited liability company with its principal place of business located at 1187 N. 1200 W Suite 300, Orem, UT 84057.

2.    JLH Enterprises, is a Wisconsin limited liability company with its principal place of business located at 1940 Renaissance Court, Green Bay, WI 54313-4347.

3.    Damien Mudge is the owner and president of Worth Enterprises LLC. Veil Corporate LLC is the registered agent for Worth and maintains an office address of 1187 N. 1200 W Suite 300 Orem, UT 84057.

1

4.   Jeremy L. Huber is the sole owner, manager, and registered agent of JLH Enterprises, LLC, and maintains an office address at 1940 Renaissance Court, Green Bay, WI 54313-4347.

## JURISDICTION & VENUE

5.   Personal jurisdiction over JLH Enterprises and Jeremy Huber are proper pursuant to Wis. Stat. § 801.05.

6.   Venue is proper pursuant to Wis. Stat. § 801.50(4) because this county is where the defendant did substantial business managing the real property located at 308 Albion Street, Edgerton, WI 53534, which is the subject of the claim.

## GENERAL ALLEGATIONS

1.   Worth and JLH entered into a property management services contract on June 20, 2017, amended on September 14, 2017, for the property management of 308 Albion Street, Edgerton, WI 53534. Jeremy Huber, principal of JLH, signed the contract to manage the above-described property. The contract is attached and incorporated to this complaint as Exhibit 1.

2.   JLH and its manager/principal Jeremy Huber breached the contract by failing to provide rental income in September 2017, November 2017, and April 2018 through April 2019.

3.   The total amount of rental income due Worth is $14,667, inclusive of bank and returned check fees. The rental income statement is attached and incorporated to this complaint as Exhibit 2.

4.   Worth formally terminated the contract on April 25, 2019 via certified letter.

5.   JLH has acknowledged its failure to provide the rental income and has made multiple promises to pay, without any action. The correspondence between the parties is attached and incorporated to this complaint as Exhibit 3.

6.   Worth has attempted to resolve this issue without first resorting to litigation. Worth attempted to set up a payment plan that JLH initially agreed to, but JLH has not complied. The repayment

2

agreement is attached and incorporated to this complaint as Exhibit 4.

## FIRST CLAIM FOR RELIEF
### Property Loss Caused by Crime - Theft (Pursuant to Wis. Stat. § 895.446)

1.     Each of the previous paragraphs are re-alleged and incorporated herein by reference.

2.     Worth suffered financial losses due to Jeremy Huber's intentional conduct prohibited under Wis. Stat. § 943.20 (Theft), creating a cause of action against Huber in his individual capacity.

3.     By virtue of their contracted business relationship, the defendant, collected, possessed, and took custody of rental income owed to Worth in the amount of $22,723.

4.     The defendant intentionally retained possession of $14,667 of the rental income without Worth's consent, with intent to convert to his own use.

5.     The defendant refused to deliver the rental income in his possession by virtue of their business arrangement, upon the demand of Worth to return it, demonstrating prima facie evidence of an intent to convert to his own use.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

1.     Each of the previous paragraphs are re-alleged and incorporated herein by reference.

2.     The property services contract is valid and enforceable against JLH.

3.     In consideration of the payments to be made to JLH under the contract, Worth provided JLH with the ability to manage, operate, control, rent, and lease the property at 308 Albion Street.

4.     JLH materially breached the contract by failing to turn over rental income from the property as required by the contract.

5.     As a direct and proximate result of JLH's breaches of the contract, Worth has suffered the following damages: 1) all unpaid monthly rental income due from April 2017, November 2017, and April 2018 through April 2019; 2) all court costs and attorney fees incurred by Worth to enforce its rights and remedies; and 3) all other actual consequential damages arising from JLH's breach in an

3

amount to be determined by the Court. Worth has incurred damages in excess of $16,600.

WHEREFORE, Worth requests the Court award judgment on its claims against the defendant as follows:

A.    For all damages and the entry of money judgments against JLH, including compensatory, direct, indirect, consequential and incidental damages as allowed by law including but not limited to:

1.   All unpaid rental income and other monies collected by the defendant on behalf of Worth, as a result of the property management agreement of 308 Albion Street.

2.   All court costs and attorney fees incurred by Worth in the enforcement of its rights and remedies.

B.   And any other relief the Court deems proper and equitable.

Dated this 5th day of December 5, 2019

BANSE LAW GROUP

Electronically signed by Crystal A. Banse
State Bar No. 1065307
Attorneys for Worth Enterprises LLC

25 W. Main Street # 500
Madison, WI 53703
(608) 620-5295 direct
(608) 618-4249 assistant
(608) 509-7053 fax
crystal@banselaw.com

4

**EXHIBIT 1**
RECEIVED
12-06-2019



### PROPERTY MANAGEMENT AGREEMENT

This Agreement is made and entered into this 1st day of June, 2017 between Worth Enterprises LLC (Owner) and JLH Enterprises LLC (Manager).

Owner employs the services of Manager to manage, operate, control, rent and lease the following described property: 308 Albion St (upper & lower).

**Responsibilities of Manager**. Owner hereby appoints Manager as his lawful agent and attorney-in-fact with full authority to do any and all lawful things necessary for the fulfillment of this Agreement, including the following:

A. *Collection and Disbursement*. Manager agrees to collect all rents as they become due; to render to Owner a monthly accounting of rents received and expenses paid; and to remit to Owner all income, less any sums paid out. Manager agrees to collect the rents from the tenant and to disburse funds by ordinary mail or as instructed by the Owner on or before the 15th day of the current month, provided, however, that the rent has been received from the tenant.

B. *Maintenance and Labor*. Manager agrees to decorate, to maintain, and to repair the property and to hire and to supervise all employees and other needed labor. Any repairs or maintenance exceeding $500 (five hundred dollars) shall receive owner approval.

C. *Advertisement and Legal Proceedings*. Manager agrees to advertise for tenants, screen tenants and select tenants of suitable credit worthiness. Manager will set rents that in the opinion of the Manager at the time of the rent negotiations with the tenant, reflect the market conditions of that time and approximate rents of comparable rental properties, unless expressly instructed in writing by the Owner to the Manager to the contrary, as to the amount of the initial rent and any subsequent increases as may from time to time be appropriate. Manager agrees to rent and to lease the property; to sign, renew and to cancel rental agreements and leases for the property or any part thereof; to sue and recover for rent and for loss or damage to any part of the property and/or furnishings; and, when expedient, to compromise, settle and release any such legal proceedings or lawsuits.

**Liability of Manager**. Owner hereby agrees to hold Manager harmless from, and to defend Manager against, any and all claims, charges, debts, demands and lawsuits. Owner agrees to pay Manager's attorney's fees related to Manager's management of the herein-described property and any liability for injury on or about the property which may be suffered by any employee, tenant or guest upon the property. Owner agrees to maintain sufficient and prudent all risks property insurance and that the Manager shall be an additionally named insured. Owner shall provide a copy of such insurance policy to the Manager for the Manager's records.

**Compensation of Manager**. Owner agrees to compensate Manager as follows. Owner agrees to pay the Manager an amount equal to fifty (50%) percent of the first full month's rent as a fee for acquiring, screening, and renting the premises; and further agrees to eight (8%) percent of all rents collected, as a fee for managing the property; which fees, plus any repair expenses, may be deducted by the Manager from rents, and further agrees to abide by the conditions set forth by the Manager to the tenant on the Owner's behalf.

**Term of Agreement**. This Agreement shall be effective as of the 1st day of June, 2017 and shall expire on the 1st day of September, 2017. Upon expiration of the above initial term, this Agreement shall automatically be renewed and extended for a like period of time unless terminated in writing by either party by providing written notice 5 days prior to the date for such renewal. This Agreement may also be terminated by mutual agreement of the parties at any time. Upon termination Owner shall pay to Manager any fees, commissions and expenses due Manager under terms of this Agreement, which are owing to Manager. In the event of the premises not renting within a 45 day period of entering into this agreement, or of a vacancy continuing for a period of longer than 45 days, Owner reserves the right to declare this agreement void.

**Successors and Assigns**. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of Manager and the heirs, administrators, successors, and assigns of the Owner.

## PROPERTY MANAGEMENT AGREEMENT AMENDMENT

It is agreed upon by both parties that the Property Management Agreement between Worth Enterprises LLC (Owner) and JLH Enterprises LLC (Manager) for the property located at 308 Albion St, Edgerton, WI (upper & lower) dated for June 1, 2017 and signed by both parties shall be extended to September 1, 2018.

_____  9/14/17
Owner

_____  9-12-17
Manager

Notwithstanding the preceding sentence, Manager shall not assign its interest under this Agreement except in connection with the sale of all or substantially all of the assets of its business. In the event of such sale, Manger shall be released from all liability under this Agreement upon the express assumption of such liability by its assignee.

This document represents the entire Agreement between the parties hereto.

IN WITNESS WHEREOF, the parties hereto hereby execute this Agreement on the date first above written.

_____     6/20/17
Owner

_____     6-1-17
Manager

RECEIVE**EXHIBIT 2**
12-06-2019

2019CV001229
Honorable Daniel T. Dillon
Branch 4

**308 Albion Street Income Statement**

| DATE | RENTAL INCOME | MONEY RECEIVED | |
|------|--------------|----------------|---|
| Sep-17 | $1,196 | $0 | |
| Oct-17 | $1,196 | $1,196 | |
| Nov-17 | $1,196 | $0 | |
| Dec-17 | $1,196 | $1,196 | |
| Jan-18 | $1,196 | $1,196 | |
| Feb-18 | $1,196 | $1,196 | |
| Mar-18 | $1,196 | $1,196 | |
| Apr-18 | $1,196 | $0 | |
| May-18 | $1,196 | $0 | No upper tenant rent |
| Jun-18 | $598 | $0 | No upper tenant rent |
| Jul-18 | $598 | $0 | |
| Aug-18 | $1,196 | $0 | |
| Sep-18 | $1,196 | $0 | |
| Oct-18 | $1,196 | $0 | |
| Nov-18 | $1,196 | $0 | |
| Dec-18 | $1,196 | $0 | |
| Jan-19 | $1,196 | $0 | |
| Feb-19 | $1,196 | $0 | |
| Mar-19 | $1,195 | $0 | |
| Apr-19 | $1,196 | $0 | |
| TOTAL | **$22,723** | $5,980 | |
| Overdraft fees | | $24 | |
| LESS: PAYMENTS | | $2,100 | |
| **TOTAL DUE** | | $14,667 | |

**RECEIVED**
**EXHIBIT 3**
**12-06-2019**

**2019CV001229**
**Honorable Daniel T. Dillon**
Crystal Banse crystal@banselaw.com
**Branch 4**

Banse Law Group Mail – Fw: 308 Albion St Statements



## Fw: 308 Albion St Statements

**damien mudge** <dmudge1@hotmail.com>                                                          Wed, Sep 4, 2019 at 9:48 AM
To: "crystal@banselaw.com" <crystal@banselaw.com>

This scan of statement gives you his address, cell and business name also some light on what's been going on in the past.

Thank you

---

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Monday, March 25, 2019 4:26 PM
**To:** damien mudge <dmudge1@hotmail.com>
**Subject:** Re: 308 Albion St Statements

Damien -

I have attached the March Income Statement of $1196 that will be deposited to your account along with $1681 which is ($764 back payment and $917 monthly payment for the $10k back payment)  Total deposit will be $2877.

Thanks,
Jeremy

On Sat, Mar 23, 2019 at 10:13 AM Jeremy Huber <jmhuber76@gmail.com> wrote:
I understand your disappointment.  When I made the payback plan I did not intend to not follow it.  I had every intention to follow it and get back on track moving forward.  I thought I would be home sooner this week after dealing with a family emergency out of town.  I should have contacted you yesterday to let you know.  I am finally on my way home tonight and will make the first deposit to your account on Monday.  Can you please wait until then to find another company and call your lawyer?  I want to get back on track and make this better for both of us.

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPhone

On Mar 22, 2019, at 4:30 PM, damien mudge <dmudge1@hotmail.com> wrote:

So Jeremy it's now the end of the business day on the 22nd and nothing in my account.

I have to say I'm REALLY disappointed in you how you have handled this. You have taken full advantage of my generosity and leniency and continually lying to me. You have used my money to supplement your lifestyle. This won't be happening anymore.

I will be changing management companies next week and you will hearing from my lawyers.

Get Outlook for iOS

**From:** damien mudge
**Sent:** Tuesday, March 19, 2019 8:55:29 PM
**To:** Jeremy Huber
**Subject:** Re: 308 Albion St Statements

Ok. Fair enough.

Thanks.

Get Outlook for iOS

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Tuesday, March 19, 2019 9:42:20 PM
**To:** damien mudge
**Subject:** Re: 308 Albion St Statements

Correct.  I had to go out of town yesterday for family and don't think I'll be back by tomorrow afternoon to deposit on the 20th this month so I will make a deposit on Thursday or Friday at latest.

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPhone

On Mar 19, 2019, at 8:30 PM, damien mudge <dmudge1@hotmail.com> wrote:

We agreed to the 20th. What's the delay Jeremy?

Get Outlook for iOS

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Tuesday, March 19, 2019 9:02:37 PM
**To:** damien mudge
**Subject:** Re: 308 Albion St Statements

Yes the money will hit your account by Friday the 22 at the latest and everything will be smooth moving forward. Enjoy your vacation.

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPhone

On Mar 19, 2019, at 3:50 PM, damien mudge <dmudge1@hotmail.com> wrote:

> It's the 19th today Jeremy. I am heading on vacation tomorrow morning. I gather the money will hit my account and everything will be smooth moving forward!!
>
> ---
>
> **From:** Jeremy Huber <jmhuber76@gmail.com>
> **Sent:** Wednesday, March 6, 2019 2:52 PM
> **To:** damien mudge
> **Subject:** Re: 308 Albion St Statements
>
> Sounds good. Thank you.
>
> Jeremy Huber
> Mobile: (920) 562-5058
>
> Sent from my iPad
>
> On Mar 6, 2019, at 8:35 AM, damien mudge <dmudge1@hotmail.com> wrote:
>
>> Ok. That makes sense Jeremy.
>>
>> I would like $917 moving forward plus $764 for this month plus match rent to make all this a little easier for you.
>>
>> Let's hope for both our positions this happens.
>>
>> Expect a payment hitting my account on or before the 20th
>>
>> Thanks,
>>
>> Get Outlook for iOS
>>
>> ---
>>
>> **From:** Jeremy Huber <jmhuber76@gmail.com>
>> **Sent:** Wednesday, March 6, 2019 9:15:19 AM
>> **To:** damien mudge
>> **Subject:** Re: 308 Albion St Statements
>>
>> The $880 payment was figured on the amortization of $10,000 with 10% interest over a one year span for principal and interest. Yes, the total should be $11,000 if it was an interest only payment. I can base the payments on $11,000 total if that is what you would like. The payment would then be $917. The $650 that I referred to was a $325 screening fee (half month's rent) that is charged to you by me when I need to advertise and sign up a new tenant. I did not charge that to you when two new tenants moved in in 2018 because I was trying to save you costs due to the past due amounts owed and help where I could.
>>
>> I plan to take either cash or a cashiers check to a local Chase Bank on or before the 20th every month going forward and have them transfer it to your account to save the mailing time and wire fees (which would be $70 each time). If they can not do that then I will do a wire transfer and pay the fees.
>>
>> Let me know if the $880 or $917 monthly payment for the $10k with interest is acceptable to you and I will add that to the monthly rental income and have it to your account on or before the 20th of each month going forward so we do not have to get lawyers involved and get our working relationship back on track.
>>
>> To save on transfers this month is it ok to just add the $764 payment to the March payment since that will be due soon and just take care of it all at once. The first payment on or before March 20th would be $764 plus (either $880 or $917 past due monthly payment) plus March income of $1196.
>>
>> Jeremy Huber
>> Mobile: (920) 562-5058

Sent from my iPad

On Mar 5, 2019, at 2:35 PM, damien mudge <dmudge1@hotmail.com> wrote:

Ok Jeremy.

I need to clarify a few things here $880 by 12 months is $10,560 (when $764 is paid this week). It should be a total of $11,000 if it's 10% interest on 10k right, plus the $650 for $11,210 total, so that should be $935 a month, not $880 or am I missing something?

Also what specific day are you sending the $764 payment this week?

How are you sending the payments?

I will only accept cashiers checks or wire (which you will be eating the fees for those).

I expect the monies to be in my account on our before 20th of each month.

My patience is DONE with this carry on Jeremy. One false step and next time we talk will be lawyers reaching out to you to collect all that is owed to me.

I really hope for both our well beings you stick to this Jeremy!!!

Thanks,

Damien

---

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Tuesday, March 5, 2019 7:56 PM
**To:** damien mudge
**Subject:** Re: 308 Albion St Statements

I apologize again for the irresponsibility and broken promises. I plan to move forward in a more professional manner and keep my word and prove it by taking the appropriate actions. I thank you for being EXTREMELY generous through this. I know it is not your fault for my problems but I am working through them to get back on the right track.

The past due balance owed is $10,764. I am asking if I can make a payment of $764 this week and then add a payment of $880 to the monthly rental income payments (which are $1198 if both units are rented) that will be due every month for the next twelve months. The payments will be made by the end of the month starting with the March payment because the past due payment included amounts through the end of February. That payment amount is based on 10% annual interest for $10,000 which is the past due balance after the $764 payment is made this week. I also did not charge for the new tenant screening fee in August for the new upper tenant and in November for the new lower tenant because of the past payment problems so that is an additional $650 of interest for 2018. I understand that these monthly payments need to be made on time going forward or there will be collection actions against me along with losing the management position of the units.

Payments as follows will be deposited to your Chase account monthly with an emailed statement on or before the 20th of each month.

$764 by March 8th, 2019
$880 + monthly rent income by March 20, 2019
$880 + monthly rent income by April 20, 2019
$880 + monthly rent income by May 20, 2019
$880 + monthly rent income by June 20, 2019
$880 + monthly rent income by July 20, 2019
$880 + monthly rent income by August 20, 2019
$880 + monthly rent income by September 20, 2019
$880 + monthly rent income by October 20, 2019
$880 + monthly rent income by November 20, 2019
$880 + monthly rent income by December 20, 2018
$880 + monthly rent income by January 20, 2020
$880 + monthly rent income by February 20, 2020

Normal monthly rent income payments going forward for March 2020.

If things turn sooner and I am able to collect on some other business invoices that have put me behind I will pay larger payments towards the past due balance.

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPad

On Mar 4, 2019, at 1:59 PM, damien mudge <dmudge1@hotmail.com> wrote:

> Hmmm. Well I appreciate your communication/honesty with this Jeremy, but I'm sure
> you can see how this is quite unsettling moving forward with you given the
> circumstances that are playing out for 9 months now with the broken promises which
> are still persisting by the way.
> You have been effectively using the rent money owed to me to pay your bills or get
> yourself out of debt or whatever else your using my money for. This is NOT the way I
> do business and want no part of this moving forward.
> I am open to hearing what you will be paying with "partial payments".
> All I can say is it has to be something above and beyond what's happening currently.
> Interest on this money should defiantly be in the conversation as well as a zero
> tolerance for late payments and if any of those are broken there will be
> consequences to those actions.
>
> I've been EXTREMELY generous with my understanding, time and money Jeremy.
> Things have to change immediately. I'm not putting up with this anymore!!!
>
> Convince me with your words, but most importantly your actions.
>
> Get Outlook for iOS
>
> ---
>
> **From:** Jeremy Huber <jmhuber76@gmail.com>
> **Sent:** Monday, March 4, 2019 2:15:52 PM
> **To:** damien mudge
> **Subject:** Re: 308 Albion St Statements
>
> I am going to have to make a couple of partial payments for the past amount owed
> over the next couple of months along with the upcoming monthly payments that will
> be sent by the 15th of each month until the past balance is caught up. I will be
> making a payment tomorrow and will send you the proposed amounts in an email by
> tomorrow to see if we can make that work. Long story short I'm unable to make the
> entire past payment at one time and I do not want to drag this out any longer without
> making a payment.
>
> Jeremy Huber
> Mobile: (920) 562-5058
>
> Sent from my iPhone
>
> On Mar 1, 2019, at 2:54 PM, damien mudge <dmudge1@hotmail.com> wrote:
>
> > Ok. Thanks.
> >
> > Get Outlook for iOS
> >
> > ---
> >
> > **From:** Jeremy Huber <jmhuber76@gmail.com>
> > **Sent:** Friday, March 1, 2019 3:44:00 PM
> > **To:** damien mudge
> > **Subject:** Re: 308 Albion St Statements
> >
> > I intend to keep my word and get back on track. Things did not go as
> > planned today so I will be unable to wire the full amount. My morning is
> > free on Monday and I will have it taken care of before noon. Going
> > forward I will keep on track and have statements and money to you by
> > the 15th. I will also update you next week after I file the case against
> > the past tenant.
> >
> > Jeremy Huber
> > Mobile: (920) 562-5058
> >
> > Sent from my iPhone
> >
> > On Feb 27, 2019, at 6:56 PM, damien mudge
> > <dmudge1@hotmail.com> wrote:
> >
> > > Ok. Sounds good. Thanks for following through with it all
> > > and keeping your word.

Get Outlook for iOS

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Wednesday, February 27, 2019 7:10:31 PM
**To:** damien mudge
**Subject:** Re: 308 Albion St Statements

Ok that is the amount that will be sent. I did not realize I
was that far behind so I will be sending the entire amount
on Friday.

The tenant that owes for June and July moved out in July
and that is why a new tenant moved in to the upper in
August. The tenant who moved out and still owed June
and July also owed three months of utilities that I paid so
a new tenant could move in. The best course of action is
to file a small claims case against him for the two months
owed to you and the utilities owed to me. I will file the
case next week when I can drive down there. The court
date should be sometime within the next month. I'm
guessing he won't show up so a judgement will most
likely be awarded.

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPhone

On Feb 27, 2019, at 3:46 PM, damien mudge
<dmudge1@hotmail.com> wrote:

> Yeah you're right. Sorry
>
> How can the current tenant that still
> is staying and paying rent not pay
> up for those 2 months in June and
> July?
>
> Seems a little confusing. What's
> the best course of action to get that
> money?
>
> ---
>
> **From:** Jeremy Huber
> <jmhuber76@gmail.com>
> **Sent:** Wednesday, February 27, 2019
> 8:05 PM
> **To:** damien mudge
> **Subject:** Re: 308 Albion St
> Statements
>
> The total I came up with from May to
> current is $10,764. Unless I missed
> something?
>
> Jeremy Huber
> Mobile: (920) 562-5058
>
> Sent from my iPad
>
> On Feb 27, 2019, at 11:27 AM, damien
> mudge <dmudge1@hotmail.com> wrote:
>
> > So there is a total of
> > $11,364 being sent
> > today Jeremy from May
> > to current?
> >
> > Account number
> > 527066703
> > Routing number
> > 021000021

Thanks

**From:** Jeremy Huber
<jmhuber76@gmail.com>
**Sent:** Wednesday,
February 27, 2019 2:57
PM
**To:** damien
**Subject:** 308 Albion St
Statements

Damien -

I have attached all income
statements for 2018 and Jan
- Feb 2019. The outstanding
amount for 2018 is for May -
December for a total of
$8,372. The outstanding
amount for 2019 to date is
$2,392. Let me know if these
amounts are correct.

There was a new tenant that
moved into the upper
apartment in August and a
new tenant that moved into
the lower unit in November. I
did not charge the new tenant
screening and lease fee of
$325 for either of those to
you because of the problems
with the prior upper tenant
and also getting behind on
sending the monthly amount
due. I will keep on the prior
upper tenant to recover the
couple of months still owed. I
am also out of pocket for 3
months of his utility bills that
he left behind that I am
adding to the total he owes.

Can you also resend me your
info for Chase.

Thank you,
Jeremy

📄 **308 Albion St March Income.pdf**
120K View as HTML Download



RECEIVED
12-06-2019
2019CV001229
Honorable Daniel T. Dillon
Branch 4

# REPAYMENT AGREEMENT

This Agreement is made by and between Damien Mudge, of Worth Enterprises, LLC, a Wisconsin limited liability corporation and Jeremy Huber of JLH Enterprises, LLC a Wisconsin limited liability corporation.

Whereas both parties entered into a Property Management Agreement on June 1, 2017 and signed an amendment to that Agreement on September 12, 2017.

Whereas Jeremy Huber and JLH Enterprises, LLC breached the Agreement by failing to provide tenant's rent money to Mr. Mudge and Worth Enterprises, LLC. Mr. Huber and JLH Enterprises were formally terminated on April 25, 2019 via a certified letter.

Whereas the parties now would like to resolve the dispute with an agreement, the terms are as follow:

Jeremy Huber and JLH Enterprises, LLC agree to pay $16,658.00 to settle all claims against them by Mr. Huber and Worth Enterprises, LLC stemming from this breach of contract.

Whereas Jeremy Huber and JLH Enterprises, LLC shall pay a sum of $2,000 on June 14, 2019, a sum of $2,000 on June 21, 2019, and a sum of $2,000 on July 1, 2019, and shall thereafter make payments of $1,000.00 per month, due on the 1st of each month until the amount is paid in full.

The payments shall be made out to "Damien Mudge" and shall be made in a cashiers check or money order. The payments shall be mailed via certified mail to 27-28 Thompson Avenue, Unit 541, Long Island City, NY 11101.

Given that the actual amount of damages in light of a breach of this agreement would be unforeseeable and difficult to calculate the parties do agree and stipulate that such damages should be liquidated in the amount of $33,516.00. These damages include but are not limited to the time value of the money, lost investments/business opportunities related to not timely having the anticipated money, fees related to not timely having the money, consultation and attorneys fees related to enforcing the contract, and emotional toll and stress of not having the money on time.

This agreement shall be governed under the laws in the State of Wisconsin.

Each party individually acknowledges that, in executing this agreement, each party has had the opportunity to seek the advice of independent legal counsel, and that each party had read and understood all of the terms and provisions of this agreement. This agreement shall not be construed against any party by reason of the drafting or preparation thereof.

IN WITNESS WHEREOF, the parties herein duly affix their signatures.

| | |
|---|---|
| _____ | _____ |
| Damien Mudge | Date |
| Worth Enterprises, LLC | |
| | |
| _____ | _____ |
| Jeremy Huber | Date |
| JLH Enterprises, LLC | |

# EXHIBIT 2

Rock County

JAN 0 9 2020

Circuit Court
ROCK COUNTY

STATE OF WISCONSIN            CIRCUIT COURT

Worth Enterprises, LLC

        Plaintiff,

                                      Case No: 2019CV001229

      vs.

JLH Enterprises, LLC

Jeremy Huber

---

**ANSWER, AFFIRMATIVE DEFENSES**

Defendant (s) answer the complaint as follow:

**Parties**

1.   Admit the statements contained in paragraph numbers 1, 2, 3, 5, 6

2.   Deny the statements contained in paragraph numbers 4

**GENERAL ALLEGATIONS**

1.   Admit the statements contained in paragraph numbers 1, 4, 5, 6

2.   Deny the statements contained in paragraph numbers 2, 3

Dated this January 6, 2020

Jeremy Huber

# EXHIBIT 3

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:   Jeremy Michael Huber,                        Case No.: 20-21646-beh

Debtor,                        Chapter 13

---

**DECLARATION OF CRYSTAL BANSE**

---

1.      I am a licensed attorney in the State of Wisconsin and I represent Worth Enterprises.

2.      I have represented Worth since December 2019 for the purposes of recovering the rental income taken and kept by the Debtor, who once managed Worth's rental property.

3.      Bankruptcy was always a concern of my clients, so prior to filing the lawsuit in state court, I conducted a search to confirm the Debtor wasn't currently under bankruptcy protection.

4.      The Debtor was aware that Worth was represented from the initiation of the lawsuit. He was served my Notice of Appearance and had my contact information; as evidenced; he mailed his answer and affirmative defenses to my office timely.

5.      Nevertheless, my client and I never received any of the requisite notices from the Debtor or Debtors counsel.

6.      My client and I were first only informed of Huber's bankruptcy after the Chapter 13 plan had been confirmed.

1

7.      In response to Debtor's counsel's claims that she attempted to reach me and faxed a copy of the skeletal petition to my office around the time of filing in February 2020, I conducted an audit of our fax system; there are no records of any faxes received from Debtor's counsel, at any point.

8.      There is no record of Debtor's counsel emailing my office any time prior to October 31, 2020, and no phone records of her calling until 2021 – after we had filed our first motion in Bankruptcy court.

9.      Worth was prejudiced by the failure to be notified of Huber's bankruptcy because he was effectively shut out of the bankruptcy procedure, through no fault of his own.

**IN ACCORDANCE WITH 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: _9/14/21_  Signature: _Crystal L Banse_

# EXHIBIT 4

| Caption | | Minutes |
|---|---|---|
| Worth Enterprises, LLC vs. Jeremy L Huber et al | | 2019CV001229 |

| Clerk | Date | Court Official |
|---|---|---|
| Brenda K. Alton | 06-24-2020 | Daniel T. Dillon |

## Events

| Date | Court Record Entries | Amount | C.O.<br>Court Reporter<br>Tape/Counter<br>Location |
|---|---|---|---|
| 06-24-2020 | Pre-trial conference | | Daniel T. Dillon |
| | 01:31 PM Attorney Crystal A. Banse appeared by video means for Plaintiff Worth Enterprises, LLC. Defendant Jeremy L Huber appeared by video means. Court orders: motion for summary judgment with affidavits due July 24, 2020, responses and counter affidavits due August 28, 2020 and reply due September 11, 2020. Hearing scheduled for September 21, 2020 at 09:00 am. | | Peggy Ciembronowicz |

### Dispositions/Judgments

| Filing Date/C.O. | Disposition Date/C.O. |
|---|---|
| 12-06-2019 | |
| Daniel T. Dillon | |

GF-130I(CCAP), 04/1993 Minutes Sheet · In Court Processing

Case 2019-1464 filed. This document may be reproduced with additional pages of 80

Page 1 of 1

# EXHIBIT 5

FILED
07-23-2020
Clerk of Circuit Court
Rock County, Wisconsin
2019CV001229

STATE OF WISCONSIN    CIRCUIT COURT    ROCK COUNTY

WORTH ENTERPRISES, LLC

vs.

Case No. 2019CV1209

JLH ENTERPRISES, LLC &
JEREMY L. HUBER

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NOW comes the Plaintiff, Worth Enterprises LLC, by its attorneys Banse Law Group, by Attorney Crystal A. Banse, pursuant to Wis. Stat. § 802.08, and moves for summary judgment in its favor on all claims for relief and states the following in support:

### <u>OVERVIEW</u>

This is a straightforward breach of contract and civil theft case. Plaintiff hired the defendants to manage its rental property. As part of that agreement, the defendants agreed to remit Plaintiff's portion of the rental payments on a monthly basis. Defendants failed to do so. In fact, the defendants admitted that they misappropriated the money and promised to pay the plaintiff back. They never did.

Instead, defendants intentionally converted plaintiff's money for their own personal and business use. Plaintiff is currently owed more than $16,000 in rental payments plus interest.

As discussed in more detail below, the existence, breach, and enforceability of the contract is not disputed, nor is defendants' conversion of plaintiff's money. Accordingly, summary judgment should enter on both claims for relief in favor of the plaintiff.

### SUMMARY JUDGMENT STANDARD

"The purpose of summary judgment procedure is to avoid trials when there is nothing to try." *Tews v. NHI, LLC*, 793 N.W.2d 860, 869 (Wis. 2010). "Summary judgment must be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *State ex rel. Flynn v. Kemper Center, Inc.*, 924 N.W.2d 811, 821 (Wis. Ct. App. 2019). Here, the undisputed facts demonstrate that Plaintiff is entitled to judgment as a matter of law.

### STATEMENT OF UNDISPUTED FACTS

1.     On June 1, 2017, Plaintiff, Worth Enterprises, entered into a property management agreement with Defendant JLH Enterprises LLC. *Damien Mudge Affidavit*, ¶3, **Exhibit A**. *Property Management Agreement*, **Exhibit A-1**.[1]

2.     As part of the agreement, defendant, JLH Enterprises LLC., agreed to, among other things, "render to Owner a monthly accounting of rents received and expenses paid; and to remit to Owner all income, less any sums paid out." *Property Management Agreement*, p. 1, **Exhibit A-1**.

3.     In May 2018, defendants stopped making the required disbursements to plaintiff pursuant to their agreement. *Email Chain*, pp.5-6, **Exhibit A-2**.[2]

---

[1] This document is admissible evidence for purposes of a summary judgment motion. See *Mudge Affidavit*, ¶ 3, **Exhibit A**, establishing foundation, authentication, and relevance.

[2] This document is admissible evidence for purposes of a summary judgment motion. See *Mudge Affidavit*, ¶ 4, **Exhibit A**, establishing foundation, authentication, and relevance.

4.      By February 27, 2019, the outstanding balance owed by defendants to plaintiff had grown to $10,764. *Email Chain*, p.5, **Exhibit A-2**.

5.      On February 27, 2019, plaintiff demanded that Defendants bring the outstanding balance current by the end of the day. *Email Chain*, p.5, **Exhibit A-2**.

6.      On March 1, 2019 defendant Huber promised to pay the outstanding balance by March 4, 2019, and to remit future payments by the 15th of each month. *Email Chain*, p.4, **Exhibit A-2**.

7.      Defendant Huber failed to make payment in full as promised. Instead, on March 4, 2019, defendant Huber stated he was unable to make payment in full and needed to make partial payments, starting with a partial payment on March 5, 2019. *Email Chain*, p.4, **Exhibit A-2**.

8.      On March 5, 2019 defendant Huber proposed a payment plan for the outstanding balance and agreed to pay 10% interest on the outstanding balance. *Email Chain*, p.3, **Exhibit A-2**.

9.      On March 6, 2019, defendant Huber clarified the payment plan and agreed to make the first payment of $764 on or before March 20, 2019. *Email Chain*, p.2, **Exhibit A-2**.

10.     Defendants did not make any payments on or before March 20, 2019. *Email Chain*, p.1, **Exhibit A-2**. continued to grow. By April 2019, the outstanding balance owed pursuant to the Agreement totaled $14,667. *308 Albion St. Income Statement*, **Exhibit A-3**.[3]

11.     On April 25, 2019, Plaintiff terminated the agreement based on defendants' continued breach of the Agreement. *Mudge Affidavit*, ¶ 6, **Exhibit A**.

12.     Defendants eventually agreed to pay $16,658.00 pursuant to the terms of a repayment agreement. *Mudge Affidavit*, ¶ 7, **Exhibit A**.

---

[3] This document is "admissible evidence" for purposes of a summary judgment motion. See *Mudge Affidavit*, ¶ 5, **Exhibit A**, establishing foundation, authentication, and relevance.

13.    A written document reflecting the repayment agreement was prepared. *Mudge Affidavit*, ¶ 8, **Exhibit A**; see also *Repayment Agreement*, **Exhibit A-4**.[4]

14.    Defendants failed to sign the repayment Agreement. *Mudge Affidavit*, ¶ 8, **Exhibit A**.

15.    Defendants have still not paid the outstanding balance of $16,658.00 plus interest. *Mudge Affidavit*, ¶ 9, **Exhibit A**.

## ARGUMENT

### A.    Civil Theft

Wisconsin law allows a plaintiff who suffered property loss caused by a crime to bring a civil action to recover the loss: "Any person who suffers damage or loss by reason of intentional conduct that occurs on or after November 1, 1995, and that is prohibited under…[s.] 943.20…has a cause of action against the person who caused the damage or loss." Wis. Stat. § 895.446(1).

"The burden of proof in a civil action under [Wis. Stat. 895.446(1)] is with the person who suffers damage or loss to prove a violation" by a preponderance of the evidence. That burden has been satisfied by the undisputed facts.

To prove conduct in violation of Wis. Stat. § 943.20, the aggrieved party must show that the other party:

> By virtue of his or her office, business or employment ... having possession or custody of money ... of another, intentionally use[d], transfer[ed] ... or retain[ed] possession of such money ... without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner. A refusal to deliver any money ... which [wa]s in his or her possession or custody by virtue of his or her office, business or employment ... upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his or her own use within the meaning of this paragraph.

Wis. Stat. 943.20(1)(b).

---

[4] This document is "admissible evidence" for purposes of a summary judgment motion. See *Mudge Affidavit*, ¶ 8, **Exhibit A**, establishing foundation, authentication, and relevance.

That is exactly what happened here. Defendants had possession of the rent income from the Albion Street Property. Defendants intentionally used that rental income for their own personal and business use. See e.g., **Exhibit A-2**, p.3 ("I apologize again for the irresponsibility and broken promises"). Despite assurances in March and April 2019 to return the money in response to numerous demands from the Plaintiffs, more than a year later, the money has still not been paid. *Mudge Affidavit*, ¶ 9, **Exhibit A**. This is more than sufficient to satisfy the burden of proving a civil theft claim. See e.g., *H.A. Friend & Co. v. Professional Stationary, Inc.*, 720 N.W.2d 96, 100 (Wis.Ct.App. 2006).

### B.   Breach of Contract

A breach of contract claim requires proof of three elements: (1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages. *Brew City Redevelopment Group, LLC v. The Ferchill Group*, 714 N.W.2d 582, 588 (Wis.Ct.App. 2006).

The undisputed facts satisfy those elements: (1) The property management agreement was a contract between the plaintiff and the defendant, which required the defendant to remit payments to plaintiff each month; (2) Defendants failed to remit the payments to plaintiff; (3) Plaintiff has suffered damages by not receiving payments it was owed under the Property Management Agreement. In fact, defendants have expressly admitted, in writing, that they broke their promises set forth in the Agreement: "I apologize again for the irresponsibility and *broken promises*." **Exhibit A-2**,

## **CONCLUSION**

WHEREFORE, Plaintiff Worth, Enterprises, LLC., respectfully requests that this Court grant

this motion, enter summary judgment in its favor, and provide any further relief it deems appropriate.

Dated this 23rd day of July, 2020.


BANSE LAW LLC

Electronically signed by Crystal A. Banse
State Bar No. 1065307
Attorneys for Worth Enterprises LLC
25 W. Main Street # 500
Madison, WI 53703
(608) 620-5295
(608) 509-7053 fax
crystal@banselaw.com

1

RECEIVED
07-23-2020
2019CV001229

STATE OF WISCONSIN    CIRCUIT COURT    ROCK COUNTY

```
EXHIBIT
   A
```

WORTH ENTERPRISES, LLC

vs.

Case No. 2019CV1209

JLH ENTERPRISES, LLC &
JEREMY L. HUBER

---

## AFFIDAVIT OF DAMIEN MUDGE

I, Damien Mudge, being over the age of 18 and first duly sworn upon oath, state as follows:

1.     I am the owner of Plaintiff Worth Enterprises, LLC.

2.     I have personal knowledge of the facts set forth in this affidavit.

3.     On June 1, 2017, plaintiff Worth Enterprises entered into a property management agreement ("agreement") with defendant JLH Enterprises LLC. **Exhibit A-1** is a true and correct copy of that agreement.

4.     **Exhibit A-2** is a true and correct copy of an email chain between myself and defendant Jeremy Huber regarding defendants' continued breach of the agreement.

5.     **Exhibit A-3** is a true and correct copy of the income statement for the subject property, 308 Albion St, reflecting the total balance due in April 2019 pursuant to the terms of the agreement.

1

6.     On April 25, 2019, I terminated the agreement based on defendants' continued breach of the agreement.

7.     After I terminated the management agreement, defendants agreed to pay $16,658.00 pursuant to the terms of a repayment agreement.

8.     The repayment agreement was memorialized in a written contract, but defendants subsequently failed to sign it and stopped communicating with me and counsel. **Exhibit A-4** is a true and correct copy of the written repayment agreement.

9.     Defendants have still made no payments toward the outstanding balance of $16,658.00 plus interest.

*P. Mudge*

Damien Mudge

Signed and sworn to before me
Date:    **7/23/2020**

*Crystal L Banse*

Crystal A. Banse
Notary Public, State of Wisconsin
My commission is permanent.

1

# REPAYMENT AGREEMENT

This Agreement is made by and between Damien Mudge, of Worth Enterprises, LLC, a Wisconsin limited liability corporation and Jeremy Huber of JLH Enterprises, LLC a Wisconsin limited liability corporation.

Whereas both parties entered into a Property Management Agreement on June 1, 2017 and signed an amendment to that Agreement on September 12, 2017.

Whereas Jeremy Huber and JLH Enterprises, LLC breached the Agreement by failing to provide tenant's rent money to Mr. Mudge and Worth Enterprises, LLC. Mr. Huber and JLH Enterprises were formally terminated on April 25, 2019 via a certified letter.

Whereas the parties now would like to resolve the dispute with an agreement, the terms are as follow:

Jeremy Huber and JLH Enterprises, LLC agree to pay $16,658.00 to settle all claims against them by Mr. Huber and Worth Enterprises, LLC stemming from this breach of contract.

Whereas Jeremy Huber and JLH Enterprises, LLC shall pay a sum of $2,000 on June 14, 2019, a sum of $2,000 on June 21, 2019, and a sum of $2,000 on July 1, 2019, and shall thereafter make payments of $1,000.00 per month, due on the 1st of each month until the amount is paid in full.

The payments shall be made out to "Damien Mudge" and shall be made in a cashiers check or money order. The payments shall be mailed via certified mail to 27-28 Thompson Avenue, Unit 541, Long Island City, NY 11101.

Given that the actual amount of damages in light of a breach of this agreement would be unforeseeable and difficult to calculate the parties do agree and stipulate that such damages should be liquidated in the amount of $33,516.00. These damages include but are not limited to the time value of the money, lost investments/business opportunities related to not timely having the anticipated money, fees related to not timely having the money, consultation and attorneys fees related to enforcing the contract, and emotional toll and stress of not having the money on time.

This agreement shall be governed under the laws in the State of Wisconsin.

Each party individually acknowledges that, in executing this agreement, each party has had the opportunity to seek the advice of independent legal counsel, and that each party had read and understood all of the terms and provisions of this agreement. This agreement shall not be construed against any party by reason of the drafting or preparation thereof.

IN WITNESS WHEREOF, the parties herein duly affix their signatures.

_____          _____
Damien Mudge                              Date
Worth Enterprises, LLC

_____          _____
Jeremy Huber                             Date
JLH Enterprises, LLC

**EXHIBIT**

A-1

Banse Law Group Mail – Fw: 308 Albion St Statements



**Crystal**

## Fw: 308 Albion St Statements

damien mudge <dmudge1@hotmail.com>                                          Wed, Sep 4, 2019 at 9:48 AM
To: "crystal@banselaw.com" <crystal@banselaw.com>

This scan of statement gives you his address, cell and business name also some light on what's been going on in the past.

Thank you

---

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Monday, March 25, 2019 4:26 PM
**To:** damien mudge <dmudge1@hotmail.com>
**Subject:** Re: 308 Albion St Statements

Damien -

I have attached the March income Statement of $1196 that will be deposited to your account along with $1681 which is ($764 back payment and $917 monthly payment for the $10k back payment) Total deposit will be $2877.

Thanks,
Jeremy

On Sat, Mar 23, 2019 at 10:13 AM Jeremy Huber <jmhuber76@gmail.com> wrote:
I understand your disappointment. When I made the payback plan I did not intend to not follow it. I had every intention to follow it and get back on track moving forward. I thought I would be home sooner this week after dealing with a family emergency out of town. I should have contacted you yesterday to let you know. I am finally on my way home tonight and will make the first deposit to your account on Monday. Can you please wait until then to find another company and call your lawyer? I want to get back on track and make this better for both of us.

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPhone

On Mar 22, 2019, at 4:30 PM, damien mudge <dmudge1@hotmail.com> wrote:

So Jeremy it's now the end of the business day on the 22nd and nothing in my account.

I have to say I'm REALLY disappointed in you how you have handled this. You have taken full advantage of my generosity and leniency and continually lying to me. You have used my money to supplement your lifestyle. This won't be happening anymore.

I will be changing management companies next week and you will hearing from my lawyers.

Get Outlook for iOS

**From:** damien mudge
**Sent:** Tuesday, March 19, 2019 8:55:29 PM
**To:** Jeremy Huber
**Subject:** Re: 308 Albion St Statements

Ok. Fair enough.

Thanks.

Get Outlook for iOS

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Tuesday, March 19, 2019 9:42:20 PM
**To:** damien mudge
**Subject:** Re: 308 Albion St Statements

Correct. I had to go out of town yesterday for family and don't think I'll be back by tomorrow afternoon to deposit on the 20th this month so I will make a deposit on Thursday or Friday at latest.

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPhone

On Mar 19, 2019, at 8:30 PM, damien mudge <dmudge1@hotmail.com> wrote:

EXHIBIT

A-2

We agreed to the 20th. What's the delay Jeremy?

Get Outlook for IOS

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Tuesday, March 19, 2019 9:02:37 PM
**To:** damien mudge
**Subject:** Re: 308 Albion St Statements

Yes the money will hit your account by Friday the 22 at the latest and everything will be smooth moving forward. Enjoy your vacation.

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPhone

On Mar 19, 2019, at 3:50 PM, damien mudge <dmudge1@hotmail.com> wrote:

> It's the 19th today Jeremy. I am heading on vacation tomorrow morning. I gather the money will hit my account and everything will be smooth moving forward!!

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Wednesday, March 6, 2019 2:52 PM
**To:** damien mudge
**Subject:** Re: 308 Albion St Statements

Sounds good. Thank you.

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPad

On Mar 6, 2019, at 8:35 AM, damien mudge <dmudge1@hotmail.com> wrote:

> Ok. That makes sense Jeremy.
>
> I would like $917 moving forward plus $764 for this month plus match rent to make all this a little easier for you.
>
> Let's hope for both our positions this happens.
>
> Expect a payment hitting my account on or before the 20th
>
> Thanks,
>
> Get Outlook for IOS

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Wednesday, March 6, 2019 9:15:19 AM
**To:** damien mudge
**Subject:** Re: 308 Albion St Statements

The $880 payment was figured on the amortization of $10,000 with 10% interest over a one year span for principal and interest. Yes, the total should be $11,000 if it was an interest only payment. I can base the payments on $11,000 total if that is what you would like. The payment would then be $917. The $650 that I referred to was a $325 screening fee (half month's rent) that is charged to you by me when I need to advertise and sign up a new tenant. I did not charge that to you when two new tenants moved in in 2018 because I was trying to save you costs due to the past due amounts owed and help whore I could.

I plan to take either cash or a cashiers check to a local Chase Bank on or before the 20th every month going forward and have them transfer it to your account to save the mailing time and wire fees (which would be $70 each time). If they can not do that then I will do a wire transfer and pay the fees.

Let me know if the $880 or $917 monthly payment for the $10k with interest is acceptable to you and I will add that to the monthly rental income and have it to your account on or before the 20th of each month going forward so we do not have to get lawyers involved and get our working relationship back on track.

To save on transfers this month is it ok to just add the $764 payment to the March payment since that will be due soon and just take care of it all at once. The first payment on or before March 20th would be $764 plus (either $880 or $917 past due monthly payment) plus March income of $1196.

Jeremy Huber
Mobile: (920) 562-5058

Banse Law Group Mail - Fw: 308 Albion St Statements        9/18/19, 2:13 PM

Sent from my iPad

On Mar 5, 2019, at 2:35 PM, damien mudge <dmudge1@hotmail.com> wrote:

Ok Jeremy.

I need to clarify a few things here $880 by 12 months is $10,560 (when $764 is paid this week). It should be a total of $11,000 if it's 10% interest on 10k right, plus the $650 for $11,210 total, so that should be $935 a month, not $880 or am I missing something?

Also what specific day are you sending the $764 payment this week?

How are you sending the payments?

I will only accept cashiers checks or wire (which you will be eating the fees for those).

I expect the monies to be in my account on our before 20th of each month.

My patience is DONE with this carry on Jeremy. One false step and next time we talk will be lawyers reaching out to you to collect all that is owed to me.

I really hope for both our well beings you stick to this Jeremy!!!

Thanks,

Damien

---

**From:** Jeremy Huber <jmhuber76@gmail.com>
**Sent:** Tuesday, March 5, 2019 7:56 PM
**To:** damien mudge
**Subject:** Re: 308 Albion St Statements

I apologize again for the irresponsibility and broken promises. I plan to move forward in a more professional manner and keep my word and prove it by taking the appropriate actions. I thank you for being EXTREMELY generous through this. I know it is not your fault for my problems but I am working through them to get back on the right track.

The past due balance owed is $10,764. I am asking if I can make a payment of $764 this week and then add a payment of $880 to the monthly rental income payments (which are $1196 if both units are rented) that will be due every month for the next twelve months. The payments will be made by the end of the month starting with the March payment because the past due payment included amounts through the end of February. That payment amount is based on 10% annual interest for $10,000 which is the past due balance after the $764 payment is made this week. I also did not charge for the new tenant screening fee in August for the new upper tenant and in November for the new lower tenant because of the past payment problems so that is an additional $650 of interest for 2018. I understand that these monthly payments need to be made on time going forward or there will be collection actions against me along with losing the management position of the units.

Payments as follows will be deposited to your Chase account monthly with an emailed statement on or before the 20th of each month.

$764 by March 8th, 2019
$880 + monthly rent income by March 20, 2019
$880 + monthly rent income by April 20, 2019
$880 + monthly rent income by May 20, 2019
$880 + monthly rent income by June 20, 2019
$880 + monthly rent income by July 20, 2019
$880 + monthly rent income by August 20, 2019
$880 + monthly rent income by September 20, 2019
$880 + monthly rent income by October 20, 2019
$880 + monthly rent income by November 20, 2019
$880 + monthly rent income by December 20, 2019
$880 + monthly rent income by January 20, 2020
$880 + monthly rent income by February 20, 2020

Normal monthly rent income payments going forward for March 2020.

If things turn sooner and I am able to collect on some other business invoices that have put me behind I will pay larger payments towards the past due balance.

Banse Law Group Mail - Fw: 308 Albion St Statements                                    9/18/19, 2:13 PM

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPad

On Mar 4, 2019, at 1:59 PM, damien mudge <dmudge1@hotmail.com> wrote:

> Hmmm. Well I appreciate your communication/honesty with this Jeremy, but I'm sure
> you can see how this is quite unsettling moving forward with you given the
> circumstances that are playing out for 9 months now with the broken promises which
> are still persisting by the way.
> You have been effectively using the rent money owed to me to pay your bills or get
> yourself out of debt or whatever else your using my money for. This is NOT the way I
> do business and want no part of this moving forward.
> I am open to hearing what you will be paying with "partial payments".
> All I can say is it has to be something above and beyond what's happening currently.
> Interest on this money should defiantly be in the conversation as well as a zero
> tolerance for late payments and if any of those are broken there will be
> consequences to those actions.
>
> I've been EXTREMELY generous with my understanding, time and money Jeremy.
> Things have to change immediately. I'm not putting up with this anymore!!!
>
> Convince me with your words, but most importantly your actions.
>
> Get Outlook for iOS
> ─────────────
> From: Jeremy Huber <jmhuber76@gmail.com>
> Sent: Monday, March 4, 2019 2:15:52 PM
> To: damien mudge
> Subject: Re: 308 Albion St Statements
>
> I am going to have to make a couple of partial payments for the past amount owed
> over the next couple of months along with the upcoming monthly payments that will
> be sent by the 15th of each month until the past balance is caught up. I will be
> making a payment tomorrow and will send you the proposed amounts in an email by
> tomorrow to see if we can make that work. Long story short I'm unable to make the
> entire past payment at one time and I do not want to drag this out any longer without
> making a payment.
>
> Jeremy Huber
> Mobile: (920) 562-5058
>
> Sent from my iPhone
>
> On Mar 1, 2019, at 2:54 PM, damien mudge <dmudge1@hotmail.com> wrote:
>
>> Ok. Thanks.
>>
>> Get Outlook for iOS
>> ─────────────
>> From: Jeremy Huber <jmhuber76@gmail.com>
>> Sent: Friday, March 1, 2019 3:44:00 PM
>> To: damien mudge
>> Subject: Re: 308 Albion St Statements
>>
>> I intend to keep my word and get back on track. Things did not go as
>> planned today so I will be unable to wire the full amount. My morning is
>> free on Monday and I will have it taken care of before noon. Going
>> forward I will keep on track and have statements and money to you by
>> the 15th. I will also update you next week after I file the case against
>> the past tenant.
>>
>> Jeremy Huber
>> Mobile: (920) 562-5058
>>
>> Sent from my iPhone
>>
>> On Feb 27, 2019, at 6:56 PM, damien mudge
>> <dmudge1@hotmail.com> wrote:
>>
>>> Ok. Sounds good. Thanks for following through with it all
>>> and keeping your word.

Banse Law Group Mail – Fw: 308 Albion St Statements                                                                                                        9/18/19, 2:13 PM

Get Outlook for IOS

**From:** Jeremy Huber <jmhuber76@gmall.com>
**Sent:** Wednesday, February 27, 2019 7:10:31 PM
**To:** damlen mudge
**Subject:** Re: 308 Albion St Statements

Ok that is the amount that will be sent. I did not realize I
was that far behind so I will be sending the entire amount
on Friday.

The tenant that owes for June and July moved out in July
and that is why a new tenant moved in to the upper in
August. The tenant who moved out and still owed June
and July also owed three months of utilities that I paid so
a new tenant could move in. The best course of action is
to file a small claims case against him for the two months
owed to you and the utilities owed to me. I will file the
case next week when I can drive down there. The court
date should be sometime within the next month. I'm
guessing he won't show up so a judgement will most
likely be awarded.

Jeremy Huber
Mobile: (920) 562-5058

Sent from my iPhone

On Feb 27, 2019, at 3:46 PM, damlen mudge
<dmudge1@hotmail.com> wrote:

> Yeah you're right. Sorry
>
> How can the current tenant that still
> is staying and paying rent not pay
> up for those 2 months in June and
> July?
>
> Seems a little confusing. What's
> the best course of action to get that
> money?
>
> ---
>
> **From:** Jeremy Huber
> <jmhuber76@gmail.com>
> **Sent:** Wednesday, February 27, 2019
> 8:05 PM
> **To:** damien mudge
> **Subject:** Re: 308 Albion St
> **Statements**
>
> The total I came up with from May to
> current is $10,764. Unless I missed
> something?
>
> Jeremy Huber
> Mobile: (920) 562-5058
>
> Sent from my iPad
>
> On Feb 27, 2019, at 11:27 AM, damien
> mudge <dmudge1@hotmail.com> wrote:
>
>> So there is a total of
>> $11,364 being sent
>> today Jeremy from May
>> to current?
>>
>> Account number
>> 527066703
>> Routing number
>> 021000021

Banse Law Group Mail – Fw: 308 Albion St Statements                                                                 9/18/19, 2:13 PM

Thanks

---

**From:** Jeremy Huber
<jmhuber76@gmail.com>
**Sent:** Wednesday,
February 27, 2019 2:57
PM
**To:** damien
**Subject:** 308 Albion St
Statements

Damien -

I have attached all income
statements for 2018 and Jan
- Feb 2019. The outstanding
amount for 2018 is for May -
December for a total of
$8,372. The outstanding
amount for 2019 to date is
$2,392. Let me know if these
amounts are correct.

There was a new tenant that
moved into the upper
apartment in August and a
new tenant that moved into
the lower unit in November. I
did not charge the new tenant
screening and lease fee of
$325 for either of those to
you because of the problems
with the prior upper tenant
and also getting behind on
sending the monthly amount
due. I will keep on the prior
upper tenant to recover the
couple of months still owed. I
am also out of pocket for 3
months of his utility bills that
he left behind that I am
adding to the total he owes.

Can you also resend me your
info for Chase.

Thank you,
Jeremy

---

📄 **308 Albion St March Income.pdf**
120K View as HTML Download

**308 Albion Street Income Statement**

| DATE | RENTAL INCOME | MONEY RECEIVED | |
|---|---|---|---|
| Sep-17 | $1,196 | $0 | |
| Oct-17 | $1,196 | $1,196 | |
| Nov-17 | $1,196 | $0 | |
| Dec-17 | $1,196 | $1,196 | |
| Jan-18 | $1,196 | $1,196 | |
| Feb-18 | $1,196 | $1,196 | |
| Mar-18 | $1,196 | $1,196 | |
| Apr-18 | $1,196 | $0 | |
| May-18 | $1,196 | $0 | No upper tenant rent |
| Jun-18 | $598 | $0 | No upper tenant rent |
| Jul-18 | $598 | $0 | |
| Aug-18 | $1,196 | $0 | |
| Sep-18 | $1,196 | $0 | |
| Oct-18 | $1,196 | $0 | |
| Nov-18 | $1,196 | $0 | |
| Dec-18 | $1,196 | $0 | |
| Jan-19 | $1,196 | $0 | |
| Feb-19 | $1,196 | $0 | |
| Mar-19 | $1,195 | $0 | |
| Apr-19 | $1,196 | $0 | |
| TOTAL | $22,723 | $5,980 | |
| | Overdraft fees | $24 | |
| | LESS: PAYMENTS | $2,100 | |
| | **TOTAL DUE** | $14,667 | |

EXHIBIT
A-3

## PROPERTY MANAGEMENT AGREEMENT

This Agreement is made and entered into this 1st day of June, 2017 between Worth Enterprises LLC (Owner) and JLH Enterprises LLC (Manager).

Owner employs the services of Manager to manage, operate, control, rent and lease the following described property: 308 Albion St (upper & lower).

**Responsibilities of Manager.** Owner hereby appoints Manager as his lawful agent and attorney-in-fact with full authority to do any and all lawful things necessary for the fulfillment of this Agreement, including the following:

A. *Collection and Disbursement.* Manager agrees to collect all rents as they become due; to render to Owner a monthly accounting of rents received and expenses paid; and to remit to Owner all income, less any sums paid out. Manager agrees to collect the rents from the tenant and to disburse funds by ordinary mail or as instructed by the Owner on or before the 15th day of the current month, provided, however, that the rent has been received from the tenant.

B. *Maintenance and Labor.* Manager agrees to decorate, to maintain, and to repair the property and to hire and to supervise all employees and other needed labor. Any repairs or maintenance exceeding $500 (five hundred dollars) shall receive owner approval.

C. *Advertisement and Legal Proceedings.* Manager agrees to advertise for tenants, screen tenants and select tenants of suitable credit worthiness. Manager will set rents that in the opinion of the Manager at the time of the rent negotiations with the tenant, reflect the market conditions of that time and approximate rents of comparable rental properties, unless expressly instructed in writing by the Owner to the Manager to the contrary, as to the amount of the initial rent and any subsequent increases as may from time to time be appropriate. Manager agrees to rent and to lease the property; to sign, renew and to cancel rental agreements and leases for the property or any part thereof; to sue and recover for rent and for loss or damage to any part of the property and/or furnishings thereof; and, when expedient, to compromise, settle and release any such legal proceedings or lawsuits.

**Liability of Manager.** Owner hereby agrees to hold Manager harmless from, and to defend Manager against, any and all claims, charges, debts, demands and lawsuits. Owner agrees to pay Manager's attorney's fees related to Manager's management of the herein-described property and any liability for injury on or about the property which may be suffered by any employee, tenant or guest upon the property. Owner agrees to maintain sufficient and prudent all risks property insurance and that the Manager shall be an additionally named insured. Owner shall provide a copy of such insurance policy to the Manager for the Manager's records.

**Compensation of Manager.** Owner agrees to compensate Manager as follows. Owner agrees to pay the Manager an amount equal to fifty (50%) percent of the first full month's rent as a fee for acquiring, screening, and renting the premises; and further agrees to eight (8%) percent of all rents collected, as a fee for managing the property; which fees, plus any repair expenses, may be deducted by the Manager from rents, and further agrees to abide by the conditions set forth by the Manager to the tenant on the Owner's behalf.

**Term of Agreement.** This Agreement shall be effective as of the 1st day of June, 2017 and shall expire on the 1st day of September, 2017. Upon expiration of the above initial term, this Agreement shall automatically be renewed and extended for a like period of time unless terminated in writing by either party by providing written notice 5 days prior to the date for such renewal. This Agreement may also be terminated by mutual agreement of the parties at any time. Upon termination Owner shall pay to Manager any fees; commissions and expenses due Manager under terms of this Agreement, which are owing to Manager. In the event of the premises not renting within a 45 day period of entering into this agreement, or of a vacancy continuing for a period of longer than 45 days, Owner reserves the right to declare this agreement void.

**Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the successors and assigns of Manager and the heirs, administrators, successors, and assigns of the Owner.



EXHIBIT

A-4

PROPERTY MANAGEMENT AGREEMENT AMENDMENT

It is agreed upon by both parties that the Property Management Agreement between Worth Enterprises LLC (Owner) and JLH Enterprises LLC (Manager) for the property located at 308 Albion St, Edgerton, WI (upper & lower) dated for June 1, 2017 and signed by both parties shall be extended to September 1, 2018.

_____    9/14/17
Owner

_____    9-12.-17
Manager

Notwithstanding the preceding sentence, Manager shall not assign its interest under this Agreement except in connection with the sale of all or substantially all of the assets of its business. In the event of such sale, Manger shall be released from all liability under this Agreement upon the express assumption of such liability by its assignee.

This document represents the entire Agreement between the parties hereto.

IN WITNESS WHEREOF, the parties hereto hereby execute this Agreement on the date first above written.

_____    6/20/17
Owner

_____    6-1-17
Manager

# EXHIBIT 6

<u>CAUSE NO.   2019CV1209</u>

| | | |
|---|---|---|
| Worth Enterprises, LLC | § | **IN THE CIRCUIT COURT OF** |
| **V.** | § | **ROCK COUNTY WISCONSIN** |
| <u>JLH Enterprises, LLC</u><br><u>Jeremy M Huber</u> | § | |

## <u>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

TO THE HONORABLE COURT:

On this day, August 28th, 2020, Defendant files this Response to Plaintiff's Motion for Summary

Judgment, and shows the Court as follows:

**The Defendant's, JLH Enterprises LLC and Jeremy M Huber ask this court not to grant the Plantiff's Motion For Summary Judment because of the following reasons:**

The Defendant JLH Enterprises, LLC is no longer in business and does not have any assets to pay the remaining amount owed to Worth Enterprises, LLC which is less than the $16,658 amount that the Plantiff is claiming.  On 6/7/2020 Jeremy Huber paid $100 to Mr Mudge's former attorney Jair Alvarez.  On 6/17/2020 Jeremy Huber paid $2,000 by cashiers check sent to Mr Mudge.  The Defendant Jeremy Huber has filed for Capter 13 Bankruptcy.

JACKI GACKSTATTER
CLERK OF CIRCUIT COURT
2020 AUG 31  PM 2:55
ROCK COUNTY WI
FILED

JACKI GACKSTATTER
CLERK OF CIRCUIT COURT

2020 AUG 31 PM 2: 55

ROCK COUNTY WI
FILED

WHEREFORE, Defendant requests that this Court deny Plaintiff's Motion for Summary

Judgment.

Respectfully submitted,

Jeremy Huber
1940 Renaissance Ct, Green Bay, WI 54313
920-562-5058
jmhuber76@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was sent on the

28th day of August, 2020 by regular U.S. mail, by facsimile, or certified mail, return

receipt requested, to the following parties or attorneys of record:

Crystal A Banse, Attorney at Law
for
Worth Enetrprises LLC & Damien Mudge



## CASHIER'S CHECK - CUSTOMER COPY

**Associated Bank**

**2006555142**

DATE: 06/17/19

**PAY**   *Two Thousand  and 00/100ths Dollars*

***$2,000.00

**TO THE
ORDER OF**   **Damien Mudge**

## NON-NEGOTIABLE

REMITTER:   LORI HUBER

# RECEIPT

No. 278629

DATE 6/7/19

FROM Jeremy Huber                    $ 100.00

One hundred                          DOLLARS

○ FOR RENT
○ FOR    Damien Mudge

| ACCT. | | ○ CASH |
|-------|---|---------|
| PAID | | ○ CHECK    FROM _____ TO _____ |
| DUE | | ○ MONEY ORDER |
| | | ○ CREDIT CARD    BY Atty Jair Awarez |

A-2501
T-46820

# Wisconsin Department of Financial Institutions
Strengthening Wisconsin's Financial Future

## Corporations Bureau

## Form 510-Limited Liability Company Articles Of Dissolution

**Entity**

| | |
|---|---|
| Name of Limited Liability Company: | JLH ENTERPRISES LLC<br>Entity ID: J038789 |
| Date the Articles of Organization were filed: | 05-02-2013 |

**Statutory Grounds & Drafted**

| | |
|---|---|
| Identify the statutory grounds for dissolution under s 183 0901 Wis Stats: | Dissolution by written consent of all members |
| This document was drafted by: | Jeremy Huber |
| This document was executed on behalf of the limited liability company on: | 02/03/2020 |

**Executed**

| | |
|---|---|
| Select one title: | Member |
| I understand that checking this box constitutes a legal signature: | Yes |
| Individual who executed: | Jeremy Huber |
| Optional Delayed Effective date: | |

**Contact Information (Optional)**

| | |
|---|---|
| Name: | Jeremy Huber |
| Street Address: | 1940 RENAISSANCE CT |
| City, State and Zip Code: | GREEN BAY |
| Phone Number: | 9205625058 |
| Email Address: | jmhuber76@gmail.com |

**Endorsement**

| | |
|---|---|
| | FILED |
| Received Date: | 08/28/2020 |





THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: August 4, 2020

Beth E. Hanan
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

IN RE:
JEREMY MICHAEL HUBER

Chapter 13

Case No.: 20-21464-BEH

Debtor

## ORDER CONFIRMING CHAPTER 13 PLAN

The debtor filed a chapter 13 plan on April 3, 2020. The plan was transmitted as required by Federal Rule of Bankruptcy Procedure 3015, Local Rule 3015, or court order. The plan meets the requirements of 11 U.S.C. §1325.

IT IS ORDERED THAT:

1. The debtors' chapter 13 plan is confirmed. This order gives effect to all of the plan's terms.

2. Debtor will make plan payments of $606.15 per month for the 60-month plan.

3. Unless otherwise provided by the plan or court order, the debtors' attorney is allowed the presumptively reasonable fee, and the trustee may disburse any unpaid portion of that fee in the manner provided for in the plan.

4. Unless the court otherwise orders, all creditors with claims entitled to priority under 11 U.S.C. §507 must be paid, in pro rata deferred cash payments, the full amount of the portion of their claim that is entitled to that priority.

5. The debtor must provide the trustee with a copy of each federal and state income tax return filed during the plan term within 14 days of filing any return.

6. The debtor may not borrow money, incur credit or sell or transfer property of the estate without the express written consent of the trustee or an order of this court.

7. If the debtor is engaged in business, the debtor must provide periodic financial statements to the trustee.

#####

# EXHIBIT 7

FILED
09-11-2020
Clerk of Circuit Court
Rock County, Wisconsin
2019CV001229

STATE OF WISCONSIN    CIRCUIT COURT    ROCK COUNTY

WORTH ENTERPRISES, LLC

vs.

Case No. 2019CV1209

JLH ENTERPRISES, LLC &
JEREMY L. HUBER

## PLAINTIFF'S REPLY BRIEF IN MOTION FOR SUMMARY JUDGMENT

In his response, Huber fails to raise any issue of material fact and does not dispute that Worth is entitled to judgment as a matter of law.  Huber does not even dispute that he committed civil theft against Worth or that he owes the amount claimed by the plaintiff. Instead, he asks the court to deny the plaintiff's motion based on his LLC's insolvency and recently confirmed Chapter 13 Bankruptcy plan. Those are not legal bases to deny a motion for summary judgment under Wisconsin law or the U.S. Bankruptcy Code. Accordingly, summary judgment should be granted. Wis. Stat. § 802.08(2)

1

Furthermore, defendant Huber's bankruptcy is not a legal defense to deny summary judgment in this case. As part of his response, Huber submitted a Chapter 13 Bankruptcy Plan Order signed on August 4, 2020. This is the first time the plaintiff was made aware Huber had filed for bankruptcy. This case has been pending since December 2019; Huber never notified Worth or counsel, nor provided the court with a copy of the automatic stay once he filed, leaving the question of whether this debt was even included in his bankruptcy.[1]

Worth Enterprises is not contesting the automatic stay in place pursuant to 11 U.S. Code § 362. However, that is only in place for the duration of the Chapter 13 plan. Once the bankruptcy plan has concluded, the stay is lifted, and litigation may resume.[2]

Accordingly, the plaintiff asks the court to find summary judgment upon the lifting of the automatic stay in defendant Huber's Chapter 13 bankruptcy.

Dated this 11th day of September 2020.

BANSE LAW LLC

<u>Electronically signed by Crystal A. Banse</u>
State Bar No. 1065307
Attorneys for Worth Enterprises LLC
25 W. Main Street #
500 Madison, WI53703
(608) 620-5295
(608) 509-7053 fax
crystal@banselaw.com

---

[1] Failure to leave a creditor off of a Chapter 13 plan means the debt will not be included in the repayment plan and will not be discharged at the end of a successful plan. Accordingly, nothing precludes the creditor from attempting to collect after bankruptcy.

[2] Further, even if this debt was listed in Huber's confirmed Chapter 13 plan, a judgment for this type of action cannot be discharged. Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

1

# EXHIBIT 8

FILED
10-28-2020
Clerk of Circuit Court
Rock County, Wisconsin
2019CV001229

1    STATE OF WISCONSIN    CIRCUIT COURT    ROCK COUNTY

2    --------------------------------------------------------

3    WORTH ENTERPRISES, LLC.,        )
                                     )
4                    Plaintiff,      ) Case No. 19-CV-1229
                                     )
5              vs.                   )
                                     )
6    JEREMY L. HUBER and JLH         )
     ENTERPRISES, LLC               )
7                                    )
                     Defendants.     )

8

9              REPORT OF PROCEEDINGS at the remote hearing

10   of the above-entitled matter taken via Zoom

11   videoconferencing before the Honorable Daniel T. Dillon,

12   Judge of said court, heard on September 21, 2020.

13

14   APPEARANCES:

15              MS. CRYSTAL A. BANSE
                Banse Law Group
16              25 West Main Street
                Fifth Floor
17              Madison, Wisconsin 53703
                   appeared via Zoom videoconferencing on
18                 behalf of the Plaintiff.

19

20

21

22

23   Court Reporter:  Margaret Ciembronowicz, CSR

24

25

                                    1

1              THE COURT:  This is 19-CV-1229.  It's the

2     matter of the Worth Enterprises, Plaintiff.  The

3     Defendants are Jeremy Huber and JLH Enterprises,

4     LLC.

5              Can we have the appearances, please?

6              MS. BANSE:  Thank you, Your Honor.  My

7     name is Attorney Crystal Banse for Worth

8     Enterprises.  Mr. Huber is not here.

9              THE COURT:  Yeah, I can kind of figure

10    that out on my own, Counsel, but thank you.  There's

11    no appearance by Mr. Huber or the corporate entity,

12    JLH Enterprises.  Mr. Huber was given the same

13    videoconferencing notification that you received,

14    Ms. Banse, with the same Zoom call number.  Also, he

15    appeared by video on June 24th, under the same

16    process, so I have a high degree of confidence that

17    he's familiar with how the process works.  He hasn't

18    participated in today's hearing.  He does not

19    appear.  The notice for today was sent out by the

20    Court on August 18th.  The same notice went to --

21    went to both sides, the plaintiff and the defendant,

22    and we haven't heard from Mr. Huber.  On his

23    nonappearance, I find that he's in default.  He's

24    clearly prepared the motion.  We'll nonetheless

25    proceed in his absence.  We have, before the Court,

                                                    2

1    a motion for summary judgment.  I can hear that

2    typing really clearly, Renee, if you want to hold

3    off from doing that or mute your system.

4            MS. CLERK:  Sorry, Judge.  Thank you.

5            THE COURT:  No problem.

6            The motion for summary judgment alleges

7    breach of contract and civil theft.  The probability

8    alleges the summary judgment proceeding requires me

9    to look to the complaint, see if the complaint

10   states a cause of action.  It does.  Look to -- look

11   to the answer and see if the answer of affirmative

12   defense raises a defense.  Colorably, perhaps, it

13   does.  And then you go to summary judgment and look

14   at the affidavits, and see, first, if the moving

15   party's affidavit is sufficient, left unchallenged

16   for relief to be granted.  I find it is.  And then

17   see if the opposing affidavit filed by Worth --

18   filed by Mr. Huber or JLH Enterprises, see if those

19   affidavits give rise to facts which dispute the

20   plaintiff's facts in such a way that there is a

21   sufficient factual controversy for the case to go

22   forward.  If there are no facts in dispute, the

23   plaintiff is entitled -- or the moving party if it's

24   the plaintiff, it's the plaintiff; if it's the

25   defendant, it's the defendant, is the part of the

                                                      3

1    moving party is entitled to their summary judgment.

2            In this case, there's some abnormalities

3    in the response of Mr. Huber, for one thing.  I'm

4    not sure if he's proposing to represent JLH

5    Enterprises, Inc., or JLH Enterprises, LLC.  If he

6    is, I don't know that he can, because he's not a

7    lawyer.  But I'm going to disregard that and get to

8    the underlying facts, and there is no counter

9    affidavit filed by Mr. Huber.  His response is

10   Document 18, which is in the court system.  It's

11   called a response to motion for summary judgment.

12   He says his corporation is no longer in business.

13   It doesn't have any assets.  He says he paid some

14   money, and he should have credit coming for $2,000

15   for a cashier's check to Mr. Mudge, and a hundred

16   dollars to Mr. Mudge's former attorney, Alvarez.

17   And he also says he's filed for Chapter 13.  And the

18   monies, the cashier check that he's attached, goes

19   all the way back to June 17th of 2019, well before

20   the action was scheduled.  And he has -- well before

21   the action was -- let's see.  Well before the action

22   was filed, six months later in December.  He does

23   not provide an affidavit.  He gave a cashier's

24   check, and it's uncertain as to whether that

25   cashier's check was previously received and credited

4

1   by Mr. Mudge.  In the response to the motion for

2   summary judgment essentially points out that Huber

3   admits effectively that he owes the amount claimed,

4   and the response from Worth Enterprises is Worth

5   Enterprises never received a notice of the Chapter

6   13 plan.  Is that true, Counsel?

7           MS. BANSE:  That is correct.  The first

8   time we ever heard about this was when he filed the

9   reply.  In fact, when I filed the complaint or was

10  going to, we checked to make sure there was no

11  pending bankruptcy proceedings.

12          THE COURT:  So is it your position that

13  even if there is a Chapter 13 plan that's been

14  filed, and there seems to be some documents here, or

15  one document that says August 4th, in the Bankruptcy

16  Court For The Eastern District of Wisconsin.

17  Mr. Huber had a Chapter 13 plan filed.  Is it your

18  position that you're not -- your client isn't

19  included in this plan because you never got notice?

20          MS. BANSE:  That is correct.  We have

21  never received any notice, either me or the client.

22          THE COURT:  Well, it's impossible to prove

23  a negative, especially with Mr. Huber not responding

24  to the Court.  Now, the Court wouldn't necessarily

25  have received a Chapter 13 notice, but your client

5

1   would.  So I find that there's an overwhelming basis
2   here for the Court to grant summary judgment.
3   There's been no response.  The affidavit to the
4   plaintiff are deemed proven and true.  There's been
5   no sworn response.  There's no counter affidavit.
6   And, furthermore, even if there were, Mr. Huber
7   hasn't appeared.  He's failed to appear, so had he
8   appeared, I think there's still a basis to grant
9   summary judgment.  Without him appearing, he is not
10  here to explain anything, though.  Maybe he thinks
11  he doesn't have to because he filed for Chapter 13,
12  and there's an automatic stay.  I'm concerned about
13  that myself.  So what I'm going to do is, I am going
14  to grant your motion for summary judgment on
15  condition that you secure some information from the
16  bankruptcy court that says that the stay was never
17  interposed and never effected in this case.
18          MS. BANSE:  Understood.
19          THE COURT:  I think that -- I think you
20  need to connect that -- close that gap.  Now,
21  arguably it was Mr. Huber's responsibility, but he
22  failed to do it, and there at least is a notion or a
23  color of the invitation of the bankruptcy
24  protection.  And giving the bankruptcy court the
25  power that it's entitled to supercede all State

                                                6

1    actions, you get your summary judgment provided the

2    bankruptcy court confirms that there was no stay in

3    effect.  However you wish to secure that from the

4    bankruptcy court is up --

5                         (Whereupon, the Zoom technology

6                          disconnected the court

7                          reporter.  The following

8                          proceedings were had after

9                          reconnection.)

10    THE COURT:  I do not want to act in

11    variegation of any stay, even though I'm not sure

12    that there was a stay.  I think there might have

13    been.  I think there's more likely than not that

14    there isn't, but just on the possibility that there

15    is, let's get that cleared up before you can get

16    your judgment.

17         MS. BANSE:  I completely understand, Your

18    Honor, and I was actually going to ask that, because

19    we would be pursuing an exception to that stay in

20    the bankruptcy court, but do everything on the up

21    and up to make sure we get there to come back.

22         THE COURT:  So to be clear now, I find

23    he's in default.  I find that you're entitled to the

24    judgment that you prayed for.  Had he not been in

25    default, accepting his pleadings at face value, I

7

1    still find that you're entitled to your judgment,

2    because he hasn't raised a defense, and he's

3    effectively admitted that he owes the money in the

4    affidavits that have been filed, including his

5    response affidavits which include emails and other

6    indicators.  But notwithstanding that, I want to

7    make sure that the bankruptcy court has no stay open

8    whatsoever in these proceedings.  I know I'm

9    repeating myself.  If you prepare an order to that

10   effect, I'll sign that it, and then you can proceed

11   to the bankruptcy court with that order.

12        MS. BANSE:  Absolutely.  Thank you, Your

13   Honor.

14        THE COURT:  And it should be clear that he

15   did not call in today or in any way explain what was

16   going on from his perspective, and I had no

17   knowledge whatsoever of anything about any kind of a

18   bankruptcy implication, frankly, until I read his

19   pleadings this morning, and those were filed,

20   though, on or about August 31st.  So that's about

21   all I can say for that, okay?

22        MS. BANSE:  Thank you.

23        THE COURT:  Thanks, Counsel.  That will

24   complete this matter.

25

8

```
 1   STATE OF WISCONSIN      )
                             ) SS
 2   COUNTY OF ROCK          )

 3

 4           I, Margaret Ciembronowicz, Official Court Reporter

 5   in and for the State of Wisconsin, County of Rock, do hereby

 6   certify that on September 21, 2020; I reported the

 7   proceedings had via Zoom videoconferencing in the

 8   above-entitled matter before the Honorable Daniel T. Dillon,

 9   to the best of my ability, and that the same is a true,

10   correct, and complete transcription of said proceedings held

11   on said date.

12           Dated this 27th day of October, 2020.

13

14   ELECTRONICALLY SIGNED:  Margaret Ciembronowicz

                             _____
15                           MARGARET CIEMBRONOWICZ
                             Certified Shorthand Reporter
16                           License No. 084-003833

17

18

19

20

21

22

23

24

25
```

9

## U.S. BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

In re:  Jeremy Michael Huber,                                    Case No. 20-21464-beh

                    Debtor.                                                Chapter 13

## CERTIFICATE OF SERVICE

On September 17, 2021 I, Attorney Crystal A. Banse, served a copy of the Notice and Motion for Relief from the Automatic Stay and Declaration that the Debt is not Discharged on the following persons in the following manner:

1.  Deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, to the parties:

> (A) listed on the most current mailing matrix, a copy of which is attached to this certificate as Attachment A.

2.  By certified mail addressed to the following parties:

Jeremy Michael Huber
c/o Deborah A. Stencel
Miller & Miller Law LLC
633 W Wisconsin Ave Ste 500
Milwaukee, WI 53203

Office of the U. S. Trustee
517 East Wisconsin Ave. Room 430
Milwaukee, WI 53202

Lori M Huber
2756 Cormier Rd
Green Bay, WI 54313

Rebecca R. Garcia
Chapter 13 Trustee
PO Box 3170
Oshkosh, WI 54903-3170

Jeremy Michael Huber
1940 Renaissance Court
Green Bay, WI 54313

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 17th day of September, 2021.

/s/ Crystal A. Banse
State Bar No. 1065307
Attorneys for Worth Enterprises, Inc.
BANSE LAW GROUP
1433 N. Water St, 4th Floor
Telephone: (414) 209-0377
Fax: (414) 295-9088
E-mail: crystal@banselaw.com

Label Matrix for local noticing
0757-2
Case 20-21464-beh
Eastern District of Wisconsin
Milwaukee
Fri Sep 17 15:17:00 CDT 2021

AT & T
PO Box 5080
Carol Stream, IL 60197-5080

Ad Astra Recovery Services, Inc.
7330 W 33rd Street North
Wichita, KS 67205-9369

Advance America
3730 S 27th St STE 110
Milwaukee, WI 53221-1305

(p)ALLIANT ENERGY
300 E SHERIDAN AVE
CENTERVILLE IA 52544-2625

Ally Financial, Inc.
2740 Arthur St
Roseville, MN 55113-1303

Ally Financial, Inc.
2740 Arthur St
Saint Paul, MN 55113-1303

(p)AMERICOLLECT INC
PO BOX 2080
MANITOWOC WI 54221-2080

Ashley M Sanfilippo
P.O box 470
Brookfield, WI 53008-0470

Associated Bank, N.A.
1305 Main St
Stevens Point, WI 54481-2898

Attorney Eric R Erdman
Hager, Dewick & Zuengler SC
200 S Washington St Ste 200
Racine, WI 53405

Attorney Kenneth Gordon Calewarts
Calewarts, Duffy & Gigot
716 Pine St
PO Box 488
Green Bay, WI 54305-0488

Attorney Kevin Eric Skogg
Dobberstein Law Firm, LLC
225 S. Executive Dr., Ste. 201
PO Box 470
Brookfield, WI 53008-0470

Attorney Phillip Caruso
1660 North Prospect Avenue Unit 2805
Milwaukee, WI 53202-6716

Attorney Richard E. Stueckroth
Dobberstein Law Firm, LLC
225 S Executive Dr Ste 201
PO Box 470
Brookfield, WI 53008-0470

BAYCARE HEALTH SYSTEMS LLC
C/O FINANCE SYSTEM OF GREEN BAY, INC.
PO BOX 1597
GREEN BAY, WI 54305-1597

BCG Equities, LLC
P.O Box 470
Brookfield, WI 53008-0470

Balance Credit of Wisconsin, LLC
dbs BalanceCredit.com
33 N LaSalle St, Ste 200
Chicago, IL 60602-3420

Crystal A Banse
Banse Law Group
1433 N Water Street
Ste 4th Floor
Milwaukee, WI 53202-2603

Bellin Health
PO Box 22487
Green Bay, WI 54305-2487

Brown County Treasurer
305 E Walnut St
PO Box 23600
Green Bay, WI 54305-3600

CEO Brett Roberts
Credit Acceptance
25505 W 12 Mile Rd
Southfield, MI 48034-8316

COTTONWOOD FINANCIAL WISCONSIN, LLC
1901 GATEWAY DRIVE
SUITE 200
IRVING, TX 75038-2425

CREDIT ACCEPTANCE
25505 W 12 MILE ROAD SUITE 3000
SOUTHFIELD, MI 48034-8331

Capital One Bank USA NA
PO Box 30281
Salt Lake City, UT 84130-0281

Cash America Today
1338 S Foothill Dr #195
Salt Lake City, UT 84108-2321

Cash Central
6785 Bobcat Way Ste 200
Dublin, OH 43016-1443

Citibank NA
701 E 60th Street N
Sioux Falls, SD 57104-0493

Citibank NA
701 E 60th Street North
Sioux Falls, SD 57104-0493

Cottonwood Financial Wisconsin LLC
1901 Gateway Dr #200
Irving, TX 75038-2425

**ATTACHMENT A**

Credit Acceptance Corporation
PO Box 5070
Southfield, MI 48086-5070

Credit One Bank NA
PO Box 98875
Las Vegas, NV 89193-8875

DFS/Cash Central of DE
84 E. 2400 N.
North Logan, UT 84341-2902

Directv, LLC
by American InfoSource as agent
4515 N Santa Fe Ave
Oklahoma City, OK 73118-7901

Dobberstein Law Firm, LLC
225 S Executive Dr Ste 201
Brookfield, WI 53005-4257

Duke Capital LLC
225 S Executive Dr
Brookfield, WI 53005-4257

Duke Capital, LLC
P.O. Box 470
Brookfield, WI 53008-0470

Finance Systems of Green Bay
301 N Jackson
Green Bay, WI 54301-4938

First Premier Bank
3820 N Louise Ave
Sioux Falls, SD 57107-0145

G-Force Properties, LLC
2021 Deckner Ave
Green Bay, WI 54302-3587

Rebecca R. Garcia
Chapter 13 Trustee
PO Box 3170
Oshkosh, WI 54903-3170

Jeremy Michael Huber
1940 Renaissance Ct
Green Bay, WI 54313-4347

Lori M Huber
2756 Cormier Rd
Green Bay, WI 54313-5475

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

Jenkie Maria V Force
2021 Deckner Ave
Racine, WI 53402

Kohn Law Firm
735 N Water St, Ste 1300
Milwaukee, WI 53202-4106

Midland Credit Management
320 East Big Beaver
Troy, MI 48083-1238

Midland Credit Management, Inc.
PO Box 2037
Warren, MI 48090-2037

NCB Management Services, Inc.
1 Allied Drive
Trevose, PA 19053-6945

National Credit Adjusters
PO Box 550
Hutchinson, KS 67504-0550

Office of the U. S. Trustee
517 East Wisconsin Ave.
Room 430
Milwaukee, WI 53202-4510

OneMain Financial
PO Box 3251
Evansville, IN 47731-3251

Onemain
PO Box 1010
Evansville, IN 47706-1010

PATHOLOGY CONSULTANTS OF GREEN BAY
C/O FINANCE SYSTEM OF GREEN BAY INC
PO BOX 1597
GREEN BAY, WI 54305-1597

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Premier Bank, LLC
Jefferson Capital Systems LLC,Assignee
PO BOX 7999
SAINT CLOUD MN 56302-7999

Quantum3 Group LLC as agent for
Credit Corp Solutions Inc
PO Box 788
Kirkland, WA  98083-0788

Republic Bank and Trust Company
PO Box 70749
Louisville, KY 40270-0749

Reviver Financial, LLC
PO Box 3023
Attn: Bankruptcy Department
Hutchinson, KS 67504-3023

Rise Financial LLC
4150 International Plaza #300
Fort Worth, TX 76109-4819

**ATTACHMENT A**

Speedy Cash
Collection Department
3611 N Ridge Road
Wichita, KS 67205-1214

SpeedyRapid Cash
PO Box 780408
Wichita, KS 67278-0408

Deborah A. Stencel
Miller & Miller Law, LLC
633 W Wisconsin Ave
Ste 500
Milwaukee, WI 53203-1905

Stupar, Schuster & Bartell
633 W Wisconsin Ave #1800
Milwaukee, WI 53203-1955

United States Attorney's Office
517 E. Wisconsin Ave.
Room 530
Milwaukee, WI 53202-4509

United States Attorney, Attention, Susan M.
Room 530 Federal Courthouse
517 E. Wisconsin Avenue
Milwaukee, WI 53202-4500

Wisconsin  Department  Of Revenue
Special Procedures Unit
P.O. Box 8901
Madison, WI 53708-8901

Wisconsin Dept. Of Revenue
Special Procedures Unit
P.O. Box 8902
Madison, WI 53708-8902

Worth Enterprises, Inc.
c/o Banse Law Group
1433 N Water Street
4th Floor
Milwaukee, WI 53202-2557

(p)ECOMMISSION FINANCIAL SERVICES
11612 BEE CAVES RD
BLDG II SUITE 200
AUSTIN TX 78738-5409

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Alliant Energy
PO Box 3068
Cedar Rapids, IA 52406-3068

Americollect Inc
1851 S Alverno Road
Manitowoc, WI 54221

(d)Americollect Inc.
1851 S Alverno Road
Manitowoc, WI 54221

Portfolio Recovery Associates, LLC
120 Corporate Blvd Ste 100
Norfolk, VA 23502

(d)Portfolio Recovery Associates, LLC
POB 41067
Norfolk, VA 23541

(d)WISCONSIN POWER AND LIGHT COMPANY
ALLIANT ENERGY CORPORATION
PO BOX 351
Cedar Rapids, IA 52406

(d)WISCONSIN POWER AND LIGHT COMPANY
PO Box 351
Cedar Rapids, IA 52406

eCommission
11612 Bee Caves Rd
Building II, Ste 200
Austin, TX 78738

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Ashley M. Sanfilippo
P.O. Box 470
Brookfield, WI 53008-0470

(d)BCG Equities, LLC
P.O. Box 470
Brookfield, WI 53008-0470

(d)Rebecca R. Garcia
Chapter 13 Trustee
PO Box 3170
Oshkosh, WI 54903-3170

ATTACHMENT A

(u) Lori Huber

(d) Wisconsin Department of Revenue
Special Procedures Unit
PO Box 8901
Madison, WI 53708-8901

End of Label Matrix
Mailable recipients    69
Bypassed recipients     5
Total                  74

ATTACHMENT A